**ISLAND CREEK COAL COMPANY, Appellant,**

v.

**James W. DAVIS; Carol M. Palmore, Acting Secretary, Labor Cabinet (Special Fund); and Workers' Compensation Board of Kentucky, Appellees.**

No. 87–CA–0683–MR.

Court of Appeals of Kentucky.

June 3, 1988.

Rehearing Denied Aug. 12, 1988.
Case Ordered Published by
Court of Appeals Aug. 12, 1988.

Discretionary Review Denied by Supreme Court Dec. 7, 1988.

William P. Swain, Peter J. Glauber, Boehl Stopher Graves & Deindoerfer, Louisville, for appellant.

J. Quentin Wesley, Morganfield, for appellee/Davis.

David R. Allen, Labor Cabinet, Louisville, for appellee/Fund.

Before COOPER, LESTER and MILLER, JJ.

MILLER, Judge.

This appeal arises from an order of the Union Circuit Court upholding an award of the Workers' Compensation Board of Kentucky (Board). KRS Chapter 342. The appeal by the employer, Island Creek Coal Company (Island Creek), questions the apportionment upon the appellee, Carol M. Palmore, Secretary of the Labor Cabinet (Special Fund).

The facts are these: Island Creek's employee, James W. Davis, suffered an occupational *injury* on March 2, 1982. He became disabled from an occupational *disease* on June 8, 1983. By order of the Board, on June 30, 1986, he was found to be 12% permanently partially disabled by reason of the occupational injury. An award was made accordingly, apportioning 6% ($11.45 per week) against Island Creek; and, based upon the arousal of a preexisting nondisabling condition, 6% ($11.45 per week) against the Special Fund. KRS 342.120. The injury award continues for 425 weeks. In conformance with the payment method in force at the time Island Creek paid the entire award with quarterly reimbursement by the Special Fund for the Fund's share.

In the same order (June 30, 1986), the Board found Davis to suffer 100% occupational disease disability from and after the date of June 8, 1983. A 100% occupational disease award was made accordingly. Under KRS 342.316(13), the occupational disease award was apportioned 25% against Island Creek and 75% against the Special Fund. The occupational disease award provides for "life-time" benefits. According to the payment scheme, Island Creek was ordered to pay over the first 25% of Davis's life expectancy with the Special Fund paying thereafter.

Because no person may receive benefits reflecting greater than 100% disability, the Board's award provided that Island Creek and the Special Fund should receive credit

for payments made on the injury award. The Special Fund perceived an inequity arising from an overlap in the injury award and the occupational disease award. A majority of the physical injury payments (for which credit would be received) would occur during the first 25% of Davis's life expectancy—the period for which Island Creek would be liable. There would be little or no available credit of which the Special Fund could receive credit during the last 75% of the life expectancy. The net result would be that the Special Fund would be paying more than 75% of the total award, while Island Creek would be paying less than 25%. With this in mind, the Special Fund petitioned the Board under KRS 342.281 for reconsideration. By order of June 24, 1986, the Board granted the petition and modified the June 30, 1986, award by ordering Island Creek to pay an additional 13.5576 weeks of the award, the object being that Island Creek should pay 25% of the total. Island Creek appealed, the circuit court affirmed, thus precipitating this appeal. We affirm.

Island Creek offers the argument that the Board could not extend its payment period beyond 25% of Davis's life expectancy. This argument is unfounded. We believe the correct interpretation of KRS 342.316(13) is that the employer shall be liable for 25% of the *award* (the amount of money arrived at by multiplying the weekly entitlement "times" the life expectancy), *not* 25% of the weeks of life expectancy. Therefore, we think the Board was correct in extending Island Creek's pay period so as to assure its payment of 25% of the award.

Island Creek hypothesizes problems arising under the Board's position in the event of a claimant's death before expiration of his life expectancy. We will not be drawn into these suppositions. Suffice to say, compensation law is not always based upon logic. *Cf. Stovall v. Dal–Camp, Inc.*, Ky., 669 S.W.2d 531 (1984), and *Transport Motor Express, Inc. v. Finn*, Ky., 574 S.W.2d 277 (1978) (separate concurring opinion of Justice Lukowsky). We are fortified in our position by the wording of our general apportionment statute (KRS 342.120(4)), which provides as follows:

> If it is found that the employe is a person mentioned in paragraphs (a) or (b) of subsection (2) of this section and a subsequent compensable injury or occupational disease has resulted in additional permanent disability so that the degree of disability caused by the combined disabilities is greater than that which would have resulted from the subsequent injury or occupational disease alone, and the employe is entitled to receive compensation on the basis of the combined disabilities, the employer shall be liable for the payment of all *income benefits* until *the benefits* paid have reached a percentage of the full *income benefits* awarded by the board which is equal to the percentage of disability which would have resulted from the latter injury or occupational disease had there been no pre-existing disability or dormant, but aroused disease or condition. (emphasis added)

We are further fortified by *Estep Coal Co. v. Ward*, Ky., 421 S.W.2d 367 (1967), which, in our opinion, supports our conclusion. That case holds that when a physical injury and an occupational disease combine to exceed 100% disability, the injury takes precedence. In *United States Steel Corp. v. Wells*, Ky.App., 650 S.W.2d 264 (1983), we noted that physical injury and an occupational disease award cannot be manipulated such that the employer pays less than the occupational award.

For the foregoing reasons, the judgment of the Union Circuit Court is AFFIRMED.

All concur.