**PICKANDS MATHER & COMPANY**
**(Chisholm Mines), Appellant,**

v.

**Vicki G. NEWBERG, Acting Director of Special Fund; George Damron, Jr.; Ronald W. May, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 94–SC–618–WC.

Supreme Court of Kentucky.

March 23, 1995.

Benita J. Riley, Riley & Damron, P.S.C., Prestonsburg, for appellant.

David Randall Allen, Labor Cabinet, Sp. Fund, Louisville, for appellee Newberg.

Ralph Roland Case, Friend & Case, Pikeville, for appellee Damron.

OPINION OF THE COURT

Claimant was injured as well as exposed to the hazards of coal workers' pneumoconiosis. The date of the injury and last exposure was June 9, 1989. The Administrative Law Judge (ALJ) determined that claimant was 100% occupationally disabled due to coal workers' pneumoconiosis and 25% occupationally disabled due to an injury. Benefits were awarded for life in accordance with *Teledyne–Wirz v. Willhite*, Ky.App., 710 S.W.2d 858 (1986). On remand, pursuant to an appeal to the Workers' Compensation Board (Board), the liabilities of the employer and the Special Fund were corrected in order to conform to this Court's decision in *Beale v. Shepherd*, Ky., 809 S.W.2d 845 (1991). Subsequently, a petition for reconsideration was filed by the Special Fund concerning whether the Special Fund was liable for the payment of all benefits if the worker outlived his anticipated life expectancy or whether the employer and the Special Fund each would be required to pay their proportionate share of the award for the balance of the worker's life. The ALJ determined that, pursuant to KRS 342.120(5) [presently KRS 342.120(7)], the Special Fund was required to pay the entire weekly benefit for so long as claimant remained disabled.

On appeal to the Board, however, the ALJ's decision was reversed. The Board concluded that, if claimant outlived his life expectancy, *Beale v. Shepherd, supra*, and *Newberg v. Chumley*, Ky., 824 S.W.2d 413 (1992), supported requiring the Special Fund to pay no more than its proportionate share of the weekly award. In so deciding, the Board chose to disregard, as dicta, language in *Pennwalt Corporation v. Beale*, Ky.App., 840 S.W.2d 830 (1992), which indicated that the Special Fund could be required to pay more than its proportionate share of the award in those instances where an injured worker outlived the anticipated life expectancy.

The Court of Appeals affirmed the decision of the Board in an opinion which cited as additional authority the decisions in *Newberg v. Weaver*, Ky., 866 S.W.2d 435 (1993), and *Stovall v. Williams*, Ky.App., 675 S.W.2d 6 (1984). The court noted that the present payment scheme resulted from the 1982 amendments to KRS 342.120 which sought to minimize the increase in Special Fund assessments that was necessary in order to meet the unfunded obligations of the Special Fund. In view thereof, the court found it "inconceivable that our legislature intended the Special Fund to bear the 'risk' of paying more than its proportionate share should a claimant fortuitously outlive his projected life span."

The employer again appeals to this Court and asserts that the Special Fund is liable for all payments on a lifetime award after the expiration of the employer's payment period. We agree; hence, we reverse.

In *Stovall v. Williams, supra*, the court rejected an argument that a permanent, total, occupational disability award was payable only for the injured worker's life expectancy and determined that occupational life was synonymous with physical life. Accordingly, the court determined that, where an injured worker outlived the period calculated for the commutation of the attorney's fee, the payment of income benefits must resume thereafter. *Id.* at 7.

Contrary to the view taken below, *Beale v. Shepherd, supra*, provides no authority concerning the payment of an award after the worker's projected life expectancy has been reached. That case concerned the relative priority of an occupational disease award for permanent, total, occupational disability and an injury award for permanent, partial, occupational disability. The case concerned only the proper computation of the amount to be paid by each defendant during the worker's projected life expectancy. No party raised the issue of payment after that period; therefore, that issue was not addressed in the opinion.

In *Newberg v. Chumley, supra*, the employer had settled its liability to the injured worker for a lump sum based on 25% of a permanent, total, occupational disability award for the worker's life. The Special Fund's liability was litigated, after which the ALJ determined that the worker was entitled to a lifetime award which was apportioned 25% to the employer and 75% to the Special Fund. Because payment of the agreed-upon sum extinguished the employer's liability, the Special Fund's payment period was accelerated, but the amount of benefits payable during the worker's projected life expectancy was not affected. Payment of the agreed-upon sum by the employer compensated the worker for life for the 25% portion of his disability. Therefore, if the worker outlived his projected life expectancy, the Special Fund would again be liable only for 75% of a permanent, total, occupational disability for so long as the worker lived.

*Newberg v. Weaver, supra*, involved a structured settlement, the terms of which extended payment of the employer's share of the award throughout the worker's life. We determined that such a payment period was contrary to public policy because the employer's liability would not be extinguished during the worker's life, and the Special Fund's liability would never become due. In *Newberg v. Weaver*, we observed that, although KRS 342.120 set forth directions for apportioning the number of weeks in a worker's life expectancy between the employer and the Special Fund, the statute did not address the procedure to be followed where a worker outlived the projected life expectancy. In deciding the instant case, the Court of Appeals appeared to rely upon that observation as authority for the proposition that both the employer and the Special Fund should pay income benefits after the worker's life expectancy is exceeded. That reliance was misplaced.

On the date relevant to this claim KRS 342.120 provided, in pertinent part, as follows:

(4) If it is found that the employe is a person mentioned in paragraphs (a) or (b) of subsection (2) of this section and a subsequent compensable injury or occupational disease has resulted in additional permanent disability so that the degree of disability caused by the combined disabilities is greater than that which would have re-

sulted from the subsequent injury or occupational disease alone, and the employe is entitled to receive compensation on the basis of the combined disabilities, the employer shall be liable for the payment of all income benefits until the benefits paid have reached a percentage of the full income benefits awarded by the administrative law judge which is equal to the percentage of disability which would have resulted from the latter injury or occupational disease had there been no pre-existing disability or dormant, but aroused disease or condition.

(5) The remaining compensation for which such resulting condition would entitle the employe, including any compensation for disability resulting from a dormant disease or condition aroused into disabling reality by the injury or occupational disease, shall be paid out of the special fund provided for in KRS 342.122. Such remaining compensation shall be paid directly to the employe under such regulations as the secretary of finance and administration may provide for such purpose.

(6) In making the computation for the apportionment of benefits under this section, the administrative law judge shall determine the amount of the employe's weekly income benefits and apportion the award between the employer and special fund as follows:

(a) For benefits awarded under KRS 342.730(1)(b), the portions shall be based on the number of weeks stated therein;

(b) For all other benefits awarded under this chapter, except retraining incentive benefits awarded pursuant to KRS 342.732, the portions shall be based on the life expectancies contained in the overall male or female mortality tables in the most recent available edition of the U.S. decennial life tables. If the most recent edition of the U.S. decennial life tables includes Kentucky tables, these tables shall be used. If it does not, the national tables shall be used.

Although subsections (4) and (5) have been renumbered as subsections (6) and (7) since 1989, the provision for consecutive payment periods by the employer and the Special Fund remains today. We note, however, that former subsection (6), presently subsection (8), was amended in 1994. Because the instant claim arose before the effective date of the 1994 amendment we will not address what, if any, effect the amendment would have on the outcome.

We again observe that KRS 342.120 contains no explicit provision concerning the manner in which benefits are to be paid on a lifetime award after a worker has reached the anticipated life expectancy. Before it was amended in 1982, KRS 342.120 provided for payment of the entire award by the employer, with reimbursement to the employer by the Special Fund for its share of the award. Under that payment scheme, it was certain that each defendant would pay precisely its share of the award, regardless of the length of the worker's life. However, as noted by the Court of Appeals, problems arising from the unfunded liability of the Special Fund led the legislature to change the payment scheme.

In 1982, KRS 342.120 was amended in order to provide for consecutive payment periods. Since 1982, the employer has paid the entire weekly benefit directly to the worker for a period of time after which the Special Fund has done the same. The length of each defendant's payment period is that portion of the worker's life expectancy which is proportionate to the party's liability. This payment system, together with the unpredictability of life, results in an imperfect relationship between a defendant's percentage of liability and the actual sum which is paid on a given award, for it is only on average that people live precisely to their life expectancy. Under this system, where the worker does not live out his life expectancy, the employer will have overpaid; whereas, where the worker outlives his life expectancy, the Special Fund will overpay. Although this payment scheme may result in each defendant actually paying more or less than the assigned percentage of liability on a given award, it does not alter the underlying premise that each defendant is liable for its proportionate share of a lifetime award. Therefore, where the injured worker and the employer agree to settle a claim for a percent-

age of permanent, total disability, payment of the agreed-upon sum compensates the worker for life to the extent of the liability which the ALJ later apportions to the employer. *Newberg v. Chumley, supra.*

In *Pennwalt Corporation v. Beale, supra,* the Court of Appeals recognized the imperfect relationship between assigned liability and actual liability on a given award and noted that, in practice, the employer benefits in some instances by not having to pay additional benefits where the worker lives beyond the projected life expectancy; whereas, in other instances the Special Fund benefits because the worker dies before it was projected and the entire liability apportioned to the Special Fund is never paid.

In 1983, the Board, in accordance with its statutory authority, promulgated 803 KAR 25:070 in order to regulate the payment of attorney's fees by the defendants from the proceeds of a workers' compensation award in accordance with KRS 342.320. See *Stovall v. Williams, supra.* 803 KAR 25:070 § (4) provides, in pertinent part, as follows:

> (4) When the defendant payor or payors has fulfilled its obligations as reduced pursuant to subsection (2) of this section, payments will commence by the Special Fund (there will be no stoppage to recover advance attorney fee payments at this time). The Special Fund shall continue weekly benefit payments until such time as the number of weeks remaining in the specified benefit period or the life expectancy as determined by mortality tables approved by the Workers' Compensation Board, multiplied by the weekly benefit rate is equal to the total attorney fee and discount paid by all payors on behalf of the injured worker. In claims where benefits are payable for a lifetime, the weekly benefit payments will be reinstituted by the Special Fund at such time as the payor surpasses the life expectancy as determined by the mortality table approved by the Workers' Compensation Board and shall continue until terminated by death or order of the Workers' Compensation Board.

This regulation has neither been repealed nor modified since it became effective on November 2, 1983. The legislature has been fully aware of the foregoing regulation and judicial decisions, including that in *Pennwalt Corporation v. Beale, supra,* and has enacted no alternative scheme for the payment of benefits after a worker's life expectancy has been reached. Therefore, we conclude that 803 KAR 25:070 § (4) comports with the legislature's intent to the extent that it provides for the Special Fund to pay the entire weekly benefit to an injured worker who outlives the projected life expectancy.

Accordingly, the decision of the Court of Appeals is hereby reversed, and the award made by the ALJ is hereby reinstated.

All concur.