LEECO, INC., Appellant,

v.

Coy CRABTREE; Richard H. Campbell, Administrative Law Judge; Robert E. Spurlin, Director of Special Fund; and Workers' Compensation Board, Appellees.

No. 97–SC–929–WC.

Supreme Court of Kentucky.

April 16, 1998.

Timothy J. Walker, London, for Appellant.

James D. Holliday, Hazard, for Appellee Crabtree.

David Randall Allen, Labor Cabinet, Special Fund, Louisville, for Appellee Spurlin.

## OPINION OF THE COURT

This appeal concerns the proper application of the "tier down" provision contained in KRS 342.730(4) to a combined award for successive disabilities, one of which occurred before the effective date of the provision. *Acts* 1994, ch. 181, § 25.

Claimant filed a workers' compensation claim based upon injuries which were sustained in incidents occurring on July 2, 1992, and May 24, 1994. In an opinion rendered on February 28, 1996, the Administrative Law Judge (ALJ) determined that claimant was permanently and totally occupationally disabled due to the combined effects of the injuries. Relying upon the decision in *Campbell v. Sextet Mining Co.*, Ky., 912 S.W.2d 25 (1995), the ALJ determined that both injuries contributed equally to claimant's ultimate disability and awarded lifetime benefits at the average of the applicable rates for total disability for 1992 and 1994. Pursuant to stipulation, liability for the combined award was apportioned equally between the employer and the Special Fund. The employer was ordered to pay the entire benefit for the number of weeks equal to its proportionate share of claimant's life expectancy, and the Special Fund was ordered to pay the entire benefit for the balance of the compensable period.

The employer and the Special Fund petitioned for reconsideration. The Special Fund asserted that the award should be amended to provide for a "tier down" of benefits when claimant reached age 65. KRS 342.730(4). The employer made the same assertion and also asserted that each defendant was entitled to benefit from the tier down, regardless of whether it occurred during that defendant's payment period.

The ALJ sustained the petition to the extent of amending the award to provide that income benefits for the 1994 injury would be subject to the provisions of KRS 342.730(4), that the benefit amount set forth in the original award would be utilized in computing each annual reduction, and that KRS 342.730(4) would reduce each defendant's liability to the extent that it was effective during the defendant's payment period. Claimant and the employer appealed.

The Workers' Compensation Board (Board) affirmed the decision of the ALJ, relying upon *Southern v. R.B. Coal Co., Inc.*, Ky.App., 923 S.W.2d 902 (1996). Furthermore, the Board rejected claimant's argument that KRS 342.730(4) applied only from his 65th through his 70th year and that it provided for the full income benefit to be restored at age 71. Claimant and the employer again appealed; however, the Court of Appeals affirmed the decision of the Board.

The employer now appeals to this Court, asserting that KRS 342.730(4) should have been applied to the entire combined award and that this Court should overrule *Southern v. R.B. Coal Co., Inc., supra*. The Special Fund agrees that KRS 342.730(4) should have applied to the entire award but asserts that the benefit reduction should reduce the liability of a defendant only to the extent that it actually occurs in the defendant's payment period. Claimant argues that only the portion of the award which is attributable to the 1994 injury should be subject to the benefit reduction.

■ With regard to whether KRS 342.730(4) should apply to claimant's entire weekly benefit, we observe that no party appealed the manner in which the ALJ combined the awards for the two injuries into one or the manner in which the weekly benefit was calculated. Therefore, *Fleming v.*

*Windchy*, Ky., 953 S.W.2d 604 (1997), and *Spurlin v. Brooks*, Ky., 952 S.W.2d 687 (1997), do not control these facts. Here, the ALJ averaged the benefit rates for total disability for 1992 and 1994 and awarded a uniform benefit for so long as claimant remained totally disabled. In effect, half of each weekly payment compensates claimant for the disability attributable to each injury.

As enacted effective April 4, 1994, KRS 342.730(4) provides as follows:

> (4) If the injury or last exposure occurs prior to the employee's sixty-fifth birthday, any income benefits awarded under KRS 342.750, 342.316, 342.732, or this section shall be reduced by ten percent (10%) beginning at age sixty-five (65), and, by ten percent (10%) each year thereafter until and including age seventy (70). Income benefits shall not be reduced beyond the employee's seventieth birthday.

Despite the fact that half of each weekly payment is attributable to disability resulting from the 1992 injury, an injury which occurred before the effective date of KRS 342.730(4), the defendants argue that this amendment should apply to the entire weekly payment.

■ KRS 446.080(3) provides that "[n]o statute shall be construed to be retroactive, unless expressly so declared." Legislation may be applied to a cause of action which arose before its effective date only if the provision is remedial or procedural in nature and application of the provision would be consistent with the legislative intent. See KRS 446.080(1). As we observed in *Spurlin v. Adkins*, Ky., 940 S.W.2d 900, 902 (1997), the courts have consistently determined that the law in effect on the date of accident controls the amount of income benefits which a worker is entitled to receive and which the defendants may be required to pay for disability caused by a resulting injury. There-

fore, an amendment to the law with regard to the amount of an income benefit which occurs after the date of accident is viewed as substantive in nature, rather than remedial, since it affects the vested rights and responsibilities of the parties.

In the case before us, the rights and responsibilities of the parties with regard to the 1992 injury vested on July 2, 1992. Since KRS 342.730(4) was not in effect at that time, it may not be applied in order to reduce benefits attributable to the 1992 injury. In contrast, since KRS 342.730(4) became effective before May 24, 1994, it does apply to benefits attributable to the 1994 injury. Therefore, under the particular facts of this case, KRS 342.730(4) applies to half of each weekly payment.

■ The employer urges the Court to overrule *Southern v. R.B. Coal Co., Inc., supra,* and to permit it to share in the benefit reduction which will begin to occur when claimant reaches 65 years of age.[1] The thrust of the argument is that KRS 342.120 requires apportionment of the actual award of income benefits which is projected for a totally disabling work-related injury. As authority for this argument, the employer relies upon *Whittaker v. Randall Foods, Inc.*, Ky., 895 S.W.2d 571 (1995), which concerned the method for calculating the defendants' payment periods for an award of survivors' benefits where there were multiple beneficiaries. The question was whether the award to each beneficiary should be apportioned, separately, or whether the total survivors' award should be apportioned. There, we emphasized that survivors' benefits flowed from and would not exist without the underlying award to the deceased worker and determined that income benefits awarded to each surviving dependent should be viewed as components of one survivors' award. We concluded that KRS 342.120(6) and (7) required apportionment of the total amount of income benefits

---

1. In its opinion, the Court of Appeals noted that if the employer were required to pay the full amount of the award for the first half of claimant's remaining life expectancy, as ordered, it would be required to pay more than $290,000.

In contrast, if claimant lived for exactly the same number of additional weeks, the Special Fund would pay approximately $215,000, since it would save approximately $75,000 by virtue of the reduction in benefits after age 65.

payable as a result of the worker's injury, regardless of whether they were paid to the worker or to a number of surviving dependents.

The employer also relies upon *Island Creek Coal Company v. Davis*, Ky.App., 761 S.W.2d 179 (1988), which concerned the method for combining overlapping awards for a partially disabling occupational injury (apportioned equally between the employer and Special Fund) and totally disabling occupational disease (apportioned 25% to the employer and 75% to the Special Fund). The injury occurred in 1982, and the last injurious exposure in 1983. Consistent with KRS 342.120(6)(b), which was enacted in 1982, payment periods for the occupational disease award were assigned as a percentage of the worker's projected life expectancy. *Acts* 1982, ch. 278, § 17. Since payment of the injury award took precedence, and most of the 425 weeks during which it was payable would have fallen during the employer's payment period under the occupational disease award, the employer would have benefitted disproportionally from the overlap. It was determined that KRS 342.316(13) and KRS 342.120(4) both supported granting credit for benefits paid pursuant to the injury award in such a manner that each defendant paid its proportional share of the resulting occupational disease award. Subsequently, in *Beale v. Shepherd*, Ky., 809 S.W.2d 845, 849–50 (1991), this Court reaffirmed *Island Creek Coal Co. v. Davis* and set forth a formula which took its holding into account when determining the relative liabilities of the defendants under such combined awards. Application of the formula continued to assure that each defendant would be held liable for its percentage of the occupational disease award as well as for its percentage of the injury award.

*Pickands Mather & Co. v. Newberg*, Ky., 895 S.W.2d 3 (1995), also involved overlapping awards for totally disabling pneumoconiosis and a partially disabling injury. There, after the liabilities of the parties for the combined awards were apportioned pursuant to *Beale v. Shepherd*, *supra*, a question arose concerning whether the Special Fund remained liable for the entire weekly benefit if the worker outlived his projected life expectancy. We determined that it was. In doing so, we recognized that the combination of the consecutive payment periods set forth in KRS 342.120 and the unpredictability of life resulted in an imperfect relationship between a particular defendant's percentage of liability and the actual sum which the defendant paid on a given lifetime award. However, since projected life expectancy is based on the average for a particular age group, half of the members of that age group would not attain their projected life expectancy, while the other half would outlive theirs. We recognized that although the Special Fund's liability on individual awards would be affected, the net effect of the decision on the Special Fund's liability was negligible, since its loss on some awards would be offset by its gain on others. Since liability for the injury and occupational disease awards had been calculated using the formula set forth in *Beale v. Shepherd*, *supra*, "[t]he length of each defendant's payment period [was] that portion of the worker's life expectancy which [was] proportionate to the party's liability," *Id.* at 5.

The plain language of KRS 342.730(4) does not indicate the manner in which the reduction in liability should be shared by the defendants. Although the Court of Appeals relied upon *Pickands Mather & Co. v. Newberg*, *supra*, as supporting its decision both in *Southern v. R.B. Coal Co.*, *supra*, and in the instant case, we believe that reliance was misplaced. The reduction in benefits provided in KRS 342.730(4) applies only to those claims which arise before the affected worker's 65th birthday. The provision affects both partial and total disability awards, although the potential impact on the relative liability of the defendants obviously is greater in total disability awards. Furthermore, as construed by the Court of Appeals, the provision would have a disproportionate effect on the liabilities of employers and the Special Fund, both with regard to individual claims and with regard to claims as a whole.

In 1994, as in 1982 and 1983 when the claims in *Island Creek Coal Co. v. Davis*,

*supra*, arose, the defendants' payment periods for a total disability award were based on percentages of the amount of benefits awarded during the worker's projected life expectancy. 803 KAR 25:035. The U.S. Decennial Life Tables which are employed in determining a worker's projected life expectancy indicate that the majority of men will live well into their 70's and the majority of women well into their 80's. In other words, the projected life expectancy of all individuals to whom KRS 342.730(4) applies is significantly greater than age 65. Therefore, like the offset in *Island Creek Coal Co. v. Davis, supra*, this provision will affect the total amount of benefits payable during a worker's projected life expectancy. There, the offset had the potential to shift a disproportionate share of the award to the Special Fund's payment period. Here, if the construction of KRS 342.730(4) which was adopted by the Court of Appeals in *Southern v. R.B. Coal Co., Inc., supra*, is followed, a disproportionate share of the award would be shifted to the employer's payment period. Unlike the situation in *Pickands Mather & Co. v. Newberg, supra*, there is no offset of gains and losses when all claims are considered in the aggregate.

The Special Fund asserts that one of the major purposes of the 1994 amendments to the Workers' Compensation Act was to control its ever escalating liability and that, in keeping with that goal, the legislature intended for the benefit of KRS 342.730(4) to accrue to the defendant in whose payment period it occurs. In most instances that would be the Special Fund.

We recognize that attempts to contain Special Fund liability have been ongoing for many years; however, we are not persuaded that the sole intent behind every enactment which serves to benefit the Special Fund is the reduction of its liability. In attempting to determine whether the overriding legislative intent for enacting KRS 342.730(4) was to benefit the Special Fund, it is useful to remember that workers' compensation legislation does not create a quasi tort. Its purpose is to replace income which is lost as a result of industrial injury. Income benefits are but one unit in a system of wage-loss protection, and other sources of income replacement such as private retirement benefits and old age Social Security benefits eventually become available to injured workers. A reduction in workers' compensation benefits upon a worker's eligibility for an alternative form of income replacement is consistent with the principle of coordinating the various systems of wage-loss protection in order to avoid a duplication of benefits. See, *Estridge v. Stovall*, Ky.App., 704 S.W.2d 653 (1986); Larson, *Larson's Workers' Compensation Law*, § 97, *et. seq.*

We believe that the primary purpose of enacting KRS 342.730(4) was not so much to benefit the Special Fund as to minimize a duplication of benefits. This argument is strengthened by the fact that, in 1996, the legislature amended KRS 342.730(4) to provide for the termination of income benefits after a period of two years or after the worker becomes eligible for old age Social Security benefits, whichever last occurs. *Acts* 1996, 1st Ex.Sess., ch. 1, § 30. It is further strengthened by the fact that the Special Fund bears no liability for claims arising after December 12, 1996. *Acts* 1996, 1st Ex.Sess., ch. 1, § 3. We, therefore, conclude that the primary purpose of KRS 342.730(4) was to avoid duplicating other sources of income replacement, particularly old age Social Security. In doing so, the provision benefits both employers and the Special Fund by reducing the value of all total disability awards and many partial disability awards. Consistent with KRS 342.120(6) and (7), *Island Creek Coal Co. v. Davis, supra*, and *Whittaker v. Randall Foods, Inc., supra*, apportionment of the projected award should not occur until after its value has been computed.

In view of the foregoing, the decision in *Southern v. R.B. Coal Co., Inc., supra*, is overruled with regard to its effect on the apportionment of liability for partial disability awards and its effect on the apportionment of benefits which fall due during a worker's projected life expectancy. Since

those benefits which accrue after a worker outlives the projected life expectancy are the sole liability of the Special Fund, we agree that the Special Fund becomes entitled to the full benefit of KRS 342.730(4) at that time. Accordingly, the decision of the Court of Appeals in the instant claim is affirmed, in part, and reversed, in part. The claim is hereby remanded to the ALJ for a computation of the value of the projected lifetime award for the 1994 injury and for a subsequent apportionment of liability between the employer and the Special Fund.

All concur.