Gregory ADKINS, Appellant,

v.

R & S BODY COMPANY; Richard Campbell, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2000–SC–0827–WC.

Supreme Court of Kentucky.

Oct. 25, 2001.

Thomas W. Moak, Stumbo, Moak & Nunnery, PSC, Prestonsburg, Counsel for Appellant.

Gretchen R. Nunn, Prestonsburg, Counsel for Appellee, R & S Body Company.

## OPINION OF THE COURT

The claimant sustained a low back injury in September, 1997. After an unsuccessful attempt to return to light duty employment, he quit working in April, 1998. An Administrative Law Judge (ALJ) awarded benefits for permanent partial disability under KRS 342.730(1)(b) based upon an AMA impairment of 10%, and the award was enhanced by a factor of 1.5 under KRS 342.730(1)(c)1 because the claimant did not retain the physical capacity to return to his pre-injury employment. This appeal concerns whether KRS 342.730(1) is arbitrary and violates Sections 14, 54, and 241 of the Kentucky Constitution. The Court of Appeals has determined that it does not, and the claimant appeals.

The claimant was born in 1967, left school after completing the eighth grade, subsequently earned a GED, and has 18 months' training in welding. He testified that he is "pretty good in math" but that he cannot read and understand the newspaper. He was employed to repair motor vehicles and equipment and was injured on September 19, 1997, while "hubbing an axle" of a coal truck. His claim alleged that he was totally disabled by the injury.

Noting the claimant's relatively young age, high school equivalency, and ability to perform light or sedentary employment, the ALJ determined that although the claimant could probably not resume his pre-injury employment, he was not totally disabled. The claimant's disability rating was calculated by multiplying his 10% AMA impairment by a factor of 1 as set forth in KRS 342.730(1)(b), and the product was multiplied by 75% of the state's average weekly wage. The resulting income benefit was then enhanced by a factor of 1.5 under KRS 342.730(1)(c)1.

The claimant points out that the AMA *Guides to the Evaluation of Permanent Impairment* specifically states that impairment percentages "should not be used to make direct financial awards or direct estimates of disability," and he argues that for the purposes of the Workers' Compensation Act, the term "disability" refers to occupational disability, not functional impairment. *Cook v. Paducah Recapping Service*, Ky., 694 S.W.2d 684 (1985). He asserts, therefore, that the formula for calculating permanent partial disability is arbitrary and produces absurd results because it bases the amount of a worker's income benefit upon his AMA impairment rating, without regard to whether or the extent to which the particular worker's earning capacity is affected. He also asserts that, by depriving an ALJ of the authority to consider all factors that are relevant to a particular worker's occupational disability, KRS 342.730(1) violates the separation of powers doctrine because it interferes with the judicial prerogative

to decide when evidence is relevant to an issue of fact. *O'Bryan v. Hedgespeth*, Ky., 892 S.W.2d 571 (1995). Finally, he notes that the legal fiction of presumed acceptance is based on the assumption that the average worker in Kentucky can make a knowing, intelligent, and voluntary rejection of the Act, an assumption that he asserts is unwarranted. He argues that although workers are led to believe that "the system fairly compensates truly injured workers," an award that is based upon a low AMA impairment does not compensate a worker such as himself for the decrease in his earning capacity in the manner that was contemplated by *Osborne v. Johnson*, Ky., 432 S.W.2d 800 (1968).

The Workers' Compensation Act is social legislation, the purpose of which is to compensate workers who are injured in the course of their employment for necessary medical treatment and for a loss of wage-earning capacity, without regard to fault. Unlike the common law remedy for personal injury, the statutory remedy for injured workers is not predicated on redressing a tortious act. Chapter 342 requires no proof of negligence and provides a right of recovery that is not subject to tort defenses. Any rights that a worker acquires to a remedy under Chapter 342 are purely statutory and, therefore, do not come within the ambit of Section 14 of the Kentucky Constitution or the jural rights doctrine. *See Shamrock Coal Co. v. Maricle*, Ky., 5 S.W.3d 130 (1999); *Mullins v. Manning Coal Corp.*, Ky., 938 S.W.2d 260 (1997), cert. denied, 521 U.S. 1119, 117 S.Ct. 2511, 138 L.Ed.2d 1014 (1997). Likewise, the principles that control the admissibility of evidence in a personal injury action and that were at issue in *O'Bryan v. Hedgespeth, supra,* do not apply to workers' compensation proceedings.

A worker who does not affirmatively reject coverage under Chapter 342 is deemed to have accepted it. KRS 342.395. Furthermore, a worker's affirmative rejection of the Act must be knowing and voluntary because it amounts to a waiver of the worker's rights under Chapter 342. *Watts v. Newberg*, Ky., 920 S.W.2d 59 (1996); *Karst Robbins Machine Shop v. Caudill*, Ky., 779 S.W.2d 207 (1989). Contrary to the view that the claimant advances, we remain convinced that a deemed acceptance of coverage under the Act via the theory of implied consent is consistent with the purpose of the Act and is constitutional. *Shamrock Coal Co. v. Maricle, supra; Mullins v. Manning Coal Corp., supra; Wells v. Jefferson County*, Ky., 255 S.W.2d 462 (1953).

The claimant did not "opt out" of workers' compensation coverage; therefore, he is deemed to have accepted it. Furthermore, he does not allege that his injury arose from the willful and unprovoked physical aggression of his employer. Therefore, his exclusive remedy against his employer is that provided by Chapter 342. KRS 342.690(1).

KRS 342.730(1) sets forth formulae for calculating awards for total and partial disability. It provides, in pertinent part, as follows:

(b) For permanent partial disability, sixty-six and two-thirds percent (66–2/3%) of the employee's average weekly wage but not more than seventy-five percent (75%) of the state average weekly wage as determined by KRS 342.740, multiplied by the permanent impairment rating caused by the injury or occupational disease as determined by "Guides to the Evaluation of Permanent Impairment," American Medical Association, latest edition available, times the factor set forth in the table that follows:

| AMA Impairment | Factor |
|---|---|
| 0 to 5% | 0.75 |
| 6 to 10% | 1.00 |
| 11 to 15% | 1.25 |
| 16 to 20% | 1.50 |
| 21 to 25% | 1.75 |
| 26 to 30% | 2.00 |
| 31 to 35% | 2.25 |
| 36% and above | 2.50 |

. . .

(c)1. If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of the injury, the benefit for permanent partial disability shall be one and one-half (1–1/2) times the amount otherwise determined under paragraph (b) of this subsection, but this provision shall not be construed to extend the duration of payments.

(c)2. If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability otherwise payable under paragraph (b) of this subsection shall be reduced by one-half (½) for each week during which that employment is sustained. . . .

Also relevant is KRS 342.0011(11), which provides, in pertinent part, as follows:

(11)(b) "Permanent partial disability" means the condition of an employee who, due to an injury, has a permanent disability rating but retains the ability to work. . . .

(11)(c) "Permanent total disability" means the condition of an employee who, due to injury, has a permanent disability rating and has a complete and permanent inability to perform any type of work as a result of an injury. . . .

(35) "Permanent impairment rating" means percentage of whole body impairment caused by the injury or occupational disease as determined by "Guides to the Evaluation of Permanent Impair-

ment," American Medical Association, latest available edition.

(36) "Permanent disability rating" means the permanent impairment rating selected by an arbitrator or administrative law judge times the factor set forth in the table that appears at KRS 342.730(1)(b).

■■■ Income benefits are awarded to compensate injured workers for a decrease in their earning capacity and, thereby, to enable them to meet their essential economic needs and those of their dependents. *See McCown v. Hellier Elkhorn Coal Co.,* Ky., 399 S.W.2d 719 (1966); *Kilgore v. Goose Creek Coal Co.,* Ky., 392 S.W.2d 78 (1965); *Olson v. Triplett,* 255 Ky. 724, 75 S.W.2d 366 (1934). *Osborne v. Johnson, supra,* later codified in KRS 32.0011(11), defined occupational disability in terms of a number of factors that accounted for a decrease in an injured worker's earning capacity and explained that a comparison of pre- and post-injury wages provided some indication of the extent of occupational disability.

As amended effective December 12, 1996, KRS 342.0011(11)(a)–(c) define various degrees of disability. A worker such as the claimant, who is able to perform some type of work, is partially disabled. Under KRS 342.730(1)(b), the amount of income benefits for permanent partial disability is a function of the worker's disability rating, a figure that is the product of the worker's AMA impairment rating and the corresponding statutory factor. The factor that corresponds to a particular impairment increases with the degree of impairment and, therefore, the calculation of a disability rating is weighted to favor greater impairments. Furthermore, in instances where the affected worker cannot return to the pre-injury employment, the resulting benefit is enhanced by a factor of

1.5 under KRS 342.730(1)(c)1. Whereas, in instances where the worker returns to employment earning the same or greater wage than at the time of the injury, the benefit is reduced by a factor of 0.5 under KRS 342.730(1)(c)2.

Contrary to the claimant's assertion, the amended version of KRS 342.730(1)(b) and (c) did not employ the AMA impairment rating rather than occupational disability as the basis for awarding income benefits. Although a worker's impairment rating is a factor in determining the amount of benefits, it is but one of three factors. The statutory multiplier weights the formula to favor those workers who are more severely impaired, and the formula takes into account not only a worker's physical capacity to return to the pre-injury employment but also whether a worker who does return to work has suffered a loss of income.

Clearly, a worker's ability to perform physical labor is affected by the extent of his impairment. The greater a worker's impairment, the more difficulty he is likely to have in finding work after being injured. Although the formula that was devised in 1996 to compensate partially disabled workers may imperfectly measure an individual worker's loss, it cannot be said that it bears no rational relationship to the purpose of the income benefit or that it provides injured workers without a remedy for their loss. We conclude, therefore, that the formula that is employed in KRS 342.730(1)(b) and (c) is not arbitrary and that it is constitutional.

The decision of the Court of Appeals is affirmed.

All concur.