Lucy KEITH, Appellant,

v.

HOPPLE PLASTICS; Hon. R. Scott Borders, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2004–SC–0451–WC.

Supreme Court of Kentucky.

Nov. 23, 2005.

As Corrected Dec. 13, 2005.

James Russell Garvin, Brown, Lippert, Heile & Evans, Cincinnati, OH, Counsel for Appellant.

Walter A. Ward, James Owen Fenwick, III, Clark & Ward, Lexington, Counsel for Appellee.

## OPINION OF THE COURT

It is undisputed that the claimant's work-related injury occurred when she was 68 years old and eligible for Social Security retirement benefits. Leaving an argument that KRS 342.730(4) was unconstitutional for the courts to decide, an Administrative Law Judge (ALJ) determined that the statute limited the duration of the claimant's partial disability award to the difference between 102 weeks and the duration of the temporary total disability

(TTD) benefits she had already received. The claimant's sole argument on appeal was that KRS 342.730(4) violates the equal protection clause of the United States Constitution and/or Section 3 of the Kentucky Constitution. Hence, the Workers' Compensation Board (Board) affirmed under *Blue Diamond Coal Co. v. Cornett*, 300 Ky. 647, 189 S.W.2d 963 (Ky.1945). The Court of Appeals affirmed, noting that the constitutionality of the statute had been upheld previously in *McDowell v. Jackson Energy RECC*, 84 S.W.3d 71, 76 (Ky.2002). We affirm.

The claimant was born in 1932.[1] She sustained a work-related wrist fracture on June 9, 2000, and later filed an application for workers' compensation benefits. Among other things, she asserted that she was unable to return to the work in which she was injured. She testified that she had not returned to any other type of work and received social security retirement benefits of $922.00 per month. It was undisputed that the injury resulted in a 7% disability rating. An ALJ determined that the claimant lacked the physical capacity to perform the work she had performed at the time of the injury; therefore, she was entitled to an enhanced income benefit of $33.28 per week by operation of KRS 342.730(1)(c)1. Noting the claimant's testimony that she was receiving social security retirement benefits and the parties' stipulation that she had received 76.53 weeks of TTD benefits, the ALJ determined that KRS 342.730(4) limited the duration of permanent income benefits to 27.57 weeks.[2]

---

1. When deposed, she testified that although her application indicated that she was born in 1934, her birth certificate stated 1932.

2. Although the ALJ determined that the claimant was entitled to a total of two years

(104 weeks) of income benefits, the sum of 76.53 and 27.57 equals 104.10. Neither party appears to have brought the discrepancy to the ALJ's attention.

■ The claimant asserts that she is entitled to receive 425 weeks of partial disability benefits following her TTD award rather than the 27.57 weeks the ALJ awarded. She argues that although the purpose of temporary and permanent total disability benefits is to replace lost income, the purpose of partial disability benefits is to compensate the worker for having received a permanent injury. Therefore, the General Assembly had no rational basis for treating partially disabled workers differently based on age. Attempting to distinguish *McDowell v. Jackson Energy, supra,* and *Wynn v. Ibold,* 969 S.W.2d 695 (Ky.1998), she asserts that the court's rationale for concluding that income benefits duplicated Social Security retirement benefits was that the workers received temporary total or permanent total disability rather than permanent partial disability.

Several statutes are relevant to the issues this appeal presents. As defined in KRS 342.0011(12):

"Income benefits" means payments made under the provisions of this chapter to the disabled worker or his dependents in case of death, excluding medical and related benefits.

KRS 342.730(1) provides formulae for calculating "income benefits for disability" and bases the benefit on the worker's average weekly wage and disability, whether it be total (subsection a) or partial (subsections b-e). KRS 342.730(1)(d) provides 425 weeks of "income benefits" to workers with a partial disability of less than 50%. As amended effective December 12, 1996, KRS 342.730(4) provides, in pertinent part, as follows:

All income benefits payable pursuant to this chapter shall terminate as of the date upon which the employee qualifies for normal old-age Social Security retirement benefits under the United States Social Security Act, 42 U.S.C. secs. 301 to 1397f, or two (2) years after the employee's injury or last exposure, whichever last occurs.

The 1994 version of KRS 342.730(4), commonly referred to as the "tier down," applied to "any income benefits awarded under ... this section," *i.e.,* to partial as well as total disability benefits. In *Leeco, Inc. v. Crabtree,* 966 S.W.2d 951 (Ky.1998), the court noted that workers' compensation income benefits are but one of several forms of wage-loss protection, one of which is social security. Addressing the duplication of benefits that occurs when a worker is eligible for more than one form of income replacement, the court stated:

A reduction in workers' compensation benefits upon a worker's eligibility for an alternative form of income replacement is consistent with the principle of coordinating the various systems of wage-loss protection in order to avoid a duplication of benefits.

*Id.,* 966 S.W.2d at 955 (citations omitted). It concluded that the primary purpose of KRS 342.730(4) was to avoid duplicating other forms of income replacement, particularly social security retirement benefits. *Id.*

Shortly after *Leeco, Inc. v. Crabtree, supra,* was decided, in *Wynn v. Ibold,* 969 S.W.2d at 697, the court observed that reducing income benefits at an age when workers became eligible for other forms of income replacement avoided a duplication of benefits. It also reduced the overall cost of workers' compensation, thereby improving the economic climate for all citizens of the commonwealth. *Id.* Finding those to be legitimate state objectives and sound public policy, the court determined that the statute complied with the requirements of due process and equal protection. Contrary to the claimant's assertion, *Wynn v. Ibold, supra,* did not specify

whether the worker's disability was partial or total.

The 1996 version of KRS 342.730(4) is unambiguous in stating that it applies to "[a]ll income benefits payable under this chapter." Although KRS 342.730(1) refers to partial disability benefits as "income benefits" and although partial disability benefits clearly come within the definition of income benefits, the claimant asserts that KRS 342.730(4) applies only to total disability benefits, be they permanent or temporary. She argues that totally disabled individuals cannot work; therefore, their benefits replace lost income like social security retirement benefits do. In contrast, partially disabled workers are able to earn an income; therefore, permanent partial disability benefits are not designed to replace income but to compensate the worker for having received a permanent injury. This argument is based on the erroneous premise that benefits awarded for total and partial disability have different purposes.

▇▇▇ The Workers' Compensation Act does not create a quasi tort. *Adkins v. R & S Body Co.*, 58 S.W.3d 428, 431–32 (Ky.2001); *Leeco, Inc. v. Crabtree, supra.* Workers' compensation is a form of social welfare legislation. Its purpose is to require employers to provide necessary medical treatment for workers who are injured in the course of their employment and to replace some of the income they will lose, thereby enabling them to meet their own essential needs and those of their dependents. *Adkins v. R & S Body Co., supra; Wynn v. Ibold, supra; Leeco, Inc. v. Crabtree, supra; Workmen's Compensation Board of Kentucky v. Abbott*, 212 Ky. 123, 278 S.W. 533 (1925); *see also, Newberg v. Sarcione*, 865 S.W.2d 317, 319 (Ky.1993).

▇▇▇ In a case involving social or economic legislation where no fundamental right is at stake and no suspect class is

implicated, a statute will comply with the Fourteenth Amendment's right to equal protection if it furthers a legitimate state objective and there is any conceivable rational basis for the classes it creates. *Heller v. Doe*, 509 U.S. 312, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993); *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Popplewell's Alligator Dock No. 1, Inc. v. Revenue Cabinet*, 133 S.W.3d 456, 466–67 (Ky.2004); *Commonwealth v. Howard*, 969 S.W.2d 700, 703 (Ky.1998). Legislative acts are presumed to be valid; therefore, the burden is on one attacking a statute to show the negative. *Heller v. Doe, supra; Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364, 93 S.Ct. 1001, 1006, 35 L.Ed.2d 351 (1973); *Delta Air Lines, Inc. v. Commonwealth of Kentucky Revenue Cabinet*, 689 S.W.2d 14 (Ky.1985). Although the court may impose procedural safeguards on the administration of a statute, its role is not to second-guess the statute's wisdom. *Dandridge v. Williams, supra.* Equal protection does not require there to be a perfect fit between means and ends. *Heller v. Doe, supra; Dandridge v. Williams, supra; Commonwealth v. Howard, supra.* Nor does it concern whether the statute fulfills ideal social or economic objectives or whether it could have been more just and humane. *Dandridge v. Williams, supra.* The standards for determining if a legislative classification complies with principles of equal protection found in Sections 1–3 and 59(24) of the Kentucky Constitution are essentially the same. *Commonwealth v. Howard, supra; Delta Air Lines, Inc. v. Commonwealth of Kentucky Revenue Cabinet, supra.*

Like their pre–1996 counterparts, the 1996 versions of KRS 342.0011(11)(b) and KRS 342.730(1)(c) anticipate that an individual will experience a loss of present and/or future income yet retain the ability

to work, perhaps to continue in the same job. Although impairment is a prominent factor in determining the amount of a worker's partial disability under KRS 342.730(1)(b) and (c), the ability to perform physical labor clearly is affected by the amount of impairment an injury has caused. Although the method used in the 1996 statute may imperfectly measure an individual worker's loss, partial disability benefits continue to be awarded on the basis of occupational disability rather than impairment.[3] *Adkins v. R & S Body Co., supra.* Like all other income benefits, they continue to be paid periodically as set forth in KRS 342.040(1). We are aware of nothing, and the claimant has pointed to nothing, to convince us that partial disability benefits are qualitatively different from total disability benefits or that the legislature viewed them as being different.

In *McDowell v. Jackson Energy RECC, supra,* the court addressed an argument that the 1996 version of KRS 342.730(4) was unfair to workers who were eligible for social security retirement benefits and denied them equal protection on the basis of their age. Noting that an equal protection challenge "presupposes that a statute is discriminatory, thus perceptually unfair," the court explained that fairness "is an aspect of public policy reserved to the legislature" and that the court's function is to determine whether a statute is constitutional. *Id.,* 84 S.W.3d at 74. The standard for doing so is whether there is a rational basis for the perceived discrimination, *i.e.,* whether the statute is rationally related to a legitimate state purpose. *Id.;* see also *Steven Lee Enterprises v. Varney,* 36 S.W.3d 391, 395 (Ky.2000).

The *McDowell* court viewed the purpose of KRS 342.730(4) as being the same as that of the pre–1996 "tier down," which survived an equal protection challenge in *Wynn v. Ibold, supra.* Both provisions sought to avoid a duplication of income replacement benefits, thereby reducing the cost of workers' compensation and improving the economic climate for all of the state's citizens. The court noted that coordinating systems of wage-loss protection by requiring an offset for duplicative income replacement benefits or placing a ceiling on combined benefits was viewed widely as being sound public policy. Arthur Larson and Lex K. Larson, 9 *Larson's Workers' Compensation Law* § 97.35(a) and (b) (Matthew Bender 1997).

Relying on *Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971), the *McDowell* court noted that the United States Supreme Court rejected an equal protection challenge to a section of the Social Security Act that permitted social security disability benefits to be reduced by virtue of overlapping state workers' compensation benefits. It also noted that social security disability benefits are converted to social security retirement benefits at age 65. The *McDowell* court found no distinction for the purposes of a rational basis analysis between the offset required by the Social Security Act and KRS 342.730(4)'s reverse offset in which workers' compensation benefits are offset by social security retirement benefits. It concluded that like the statute at issue in *Richardson v. Belcher, supra,* KRS 342.730(4) did not deny affected workers equal protection because its purpose provided a rational basis for any perceived discrimination.

**3.** Subsection (c) was amended effective July 14, 2000, which was shortly after the claimant's injury. As amended, KRS 342.730(1)(c)3 recognizes the effects of education and advancing age on a worker's post-injury earning capacity. Among other things, it provides an additional multiplier for partially disabled workers more than 50, 55, or 60 years of age.

Legislative acts carry a strong presumption of constitutionality. *Lehnhausen v. Lake Shore Auto Parts Co., supra; Brooks v. Island Creek Coal Co.,* 678 S.W.2d 791, 792 (Ky.1984); *Delta Air Lines, Inc. v. Commonwealth of Kentucky Revenue Cabinet, supra; United Dry Forces v. Lewis,* 619 S.W.2d 489 (Ky.1981); *Sims v. Board of Education of Jefferson County,* 290 S.W.2d 491 (Ky.1956). The claimant has asserted that KRS 342.730(4) is unfair to partially disabled workers who are eligible for social security retirement. She has, however, failed to show that it has no conceivable rational basis.

The principle of terminating workers' compensation benefits when workers become eligible for normal old-age social security benefits is not new to Kentucky. *Brooks v. Island Creek Coal Co., supra.* Nor is the concept of coordinating different forms of wage-loss protection or of avoiding making it more profitable to be disabled than not. *See Richardson v. Belcher,* 404 U.S. at 83, 92 S.Ct. 254; *McDowell v. Jackson Energy RECC, supra; Wynn v. Ibold, supra;* and *Leeco v. Crabtree, supra.* Although KRS 342.730(4) discriminates against workers who are eligible for both workers' compensation disability benefits and normal social security retirement benefits, it advances a legitimate state interest in coordinating forms of income replacement benefits and avoiding a duplication of benefits. Although it discriminates against partially disabled workers who are eligible for social security retirement benefits, it advances a legitimate state interest in preventing workers who are eligible for old-age social security benefits and only partially disabled from ultimately receiving greater workers' compensation benefits than similarly-situated workers who are totally disabled. We conclude, therefore, that KRS 342.730(4) is rationally related to a legitimate state interest and that it is constitutional when applied to either total or partial disability awards. *See McDowell v. Jackson Energy, supra.*

The decision of the Court of Appeals is affirmed.

COOPER, JOHNSTONE, ROACH, and WINTERSHEIMER, JJ., concur.

SCOTT, J., dissents by separate opinion in which LAMBERT, C.J., and GRAVES, J. join.

SCOTT, Justice, Dissenting.

Lucy Keith was born in 1932 and was employed by Hopple Plastics as an assembler for her entire working life. At the time of the injury that ended her career, she was 68 years old, earning $475.60 per week, and planning to continue in her job for another four to five years. That ended with her injury. Unable to continue to perform her job, she retired and began to collect $230.50 per week ($922.00 per month) in social security retirement benefits plus $33.28 per week for her disability. Simply stated, the injury prevented her from earning an income on which she could live and left her with combined benefits on which she could not. Worse yet, although KRS 342.730(1)(b) and (d) provide for 425 weeks of partial disability benefits, KRS 342.730(4) limited Lucy to 27.57 weeks because she was eligible for social security retirement. Convinced that KRS 342.730(4) denies her equal protection, I would hold that KRS 342.730(4) is unconstitutional and reverse.

The majority's reason for approving KRS 342.730(4) under the rational basis test is that it avoids a duplication of equivalent benefits and that total and partial disability benefits are the same. Its rationale fails to confront the actual purpose for KRS 342.730(4), which is to save money for employers. Not only does the state have

no legitimate interest in doing so by depriving elderly workers who are partially disabled of workers' compensation benefits based solely on their eligibility for social security retirement, the two types of benefits are not equivalent.

The majority has equated workers' compensation benefits with social security retirement benefits. Granted, there are some similarities. However, as the dissent in *McDowell v. Jackson Energy RECC*, 84 S.W.3d 71, 79 (Ky.2002), correctly pointed out, the rationale and source of funding for the two programs belie their overlap. So does the basis for calculating benefits.

Workers' compensation is employer-funded, placing on industry the cost of the injuries it causes and providing it with an incentive to promote workplace safety. Benefits compensate a worker for a reduction in earning capacity due to an injury at a rate that is commensurate with the resulting disability. As defined in KRS 342.0011(11)(b), a partially disabled worker remains able to work. The partial disability benefit calculation in KRS 342.730(1)(b) and (c) takes into account that some partially disabled workers like Lucy will never again be able to perform the type of work they performed at the time of their injury or to earn as much as they did at that time. Also accounting for the reality that some partially disabled workers are able to return to work and earn the same or greater wage, it encourages a return to employment by permitting such workers to collect a lesser benefit but providing for a greater benefit during periods that they are unable earn the same or greater wage.

Although the social security program is mandatory for factory workers such as Lucy, it does not include all workers who are covered by Chapter 342. Participating employers contribute to social security retirement, but it is a benefit that a worker earns and to which the worker contributes.

It provides income for elderly workers without regard to disability, in an amount based on the value of the contributions to the worker's account and the age at which the worker starts to draw benefits. Eligibility for normal benefits is based on having achieved a designated age and having made at least the minimum number of contributions. The longer an individual continues to work and contribute to their account, the greater their monthly benefit will be.

The apparent purpose of social security retirement has changed over the years. Its initial purpose was to provide income for workers over 65, who were near the end of their life expectancy. They were likely to be unable to work due to advancing age and failing health, and the benefit prevented them from becoming dependent on the public. In 2002, when KRS 342.730(4) terminated Lucy's partial disability award, life expectancies were much longer. The Social Security Act permitted workers who were 65 or older to receive their full benefit and continue to work, thereby encouraging them to remain in the workforce. *See McDowell v. Jackson Energy RECC*, 84 S.W.3d at 77. Therefore, the benefit became more of a return on investment or contractual benefit than a social welfare benefit. *Id.*

Many individuals who have participated in the social security program now choose to work beyond the normal retirement age. Like Lucy, many must do so because their social security retirement benefit alone is inadequate for their essential needs. The principles of requiring industry rather than the public to bear the cost of industrial injuries and providing employers with an incentive to promote workplace safety apply no less to such workers than they do to workers who are ineligible for social security retirement. Equal protection demands that they be treated the same.

$33.28 a week is not much compared to the $475.00 a week she earned prior to her injury; nor is it a fair substitute for her lifelong loyalty to her job and employer. Yet, it's all she got—and KRS 342.730(4) took it away.

I dissent for Lucy Keith.

LAMBERT, C.J., and GRAVES, J., join this dissent.