Robert L. WHITTAKER, Director of Special Fund, Appellant,

v.

Homer THORNSBERRY; Golden Oak Mining Co., L.P.; Roger D. Riggs, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2001–SC–0404–WC.

Supreme Court of Kentucky.

Feb. 21, 2002.

Case Ordered Published by Supreme Court April 25, 2002.

As Corrected May 15, 2002.

David R. Allen, Labor Cabinet–Special Fund, Frankfort, for appellant.

David H. Neeley, Neeley & Reynolds, PSC, Barkley J. Sturgill, Jr., Fitzpatrick, Osborne & Sturgill, PSC, Prestonsburg, for appellee Golden Oak Mining Company, L.P.

Miller Kent Carter, Branham & Carter, PSC, Pikeville, for appellee Homer Thornsberry.

## OPINION OF THE COURT

The claimant was awarded total disability benefits for pneumoconiosis and later was awarded 66 weeks of temporary, total disability (TTD) benefits for an injury, with the payment of both beginning on August 10, 1992. During the pendency of the injury claim, he and his employer agreed to settle it for the TTD benefits and for an additional lump sum of $30,000, with the lump sum being applied to offset the employer's concurrent liability for the occupational disease award. Under the principles that the claimant may not receive combined benefits that exceed the maximum for total disability and that an injury award takes precedence over one for occupational disease, it is undisputed that TTD benefits for the injury offset benefits that would otherwise be due under the pneumoconiosis award during the initial 66 weeks of the claimant's life expectancy. This appeal by the Special Fund maintains that a regulation that was adopted after the pneumoconiosis award was rendered governs the applicable life expectancy and that the reduction in the effective amount of the occupational disease award must be shared proportionally by the employer and the Special Fund.

Rather than recite a long and tortuous procedural history, we will limit our discussion to what we believe is necessary for resolving the issues on appeal. The claimant was injured on March 10, 1992, and was last exposed to coal dust on August 10, 1992. His employer paid two voluntary periods of TTD benefits for the injury, the last of which was for the 66–week period between August 10, 1992, and November

14, 1993. On November 12, 1993, an Administrative Law Judge (ALJ) noted that the claimant was 46 years old when he became disabled by pneumoconiosis and awarded a total disability, apportioned 25% to the employer and 75% to the Special Fund. It is undisputed that the claimant is entitled to a weekly benefit of $380.00.

Payment of the occupational disease award was suspended pending a separate resolution of the injury claim. The claimant settled the injury claim with the employer and proceeded against the Special Fund, but the claim was later dismissed at the claimant's request. Appealing the dismissal, the Special Fund asserted that its liability should not be affected by the fact that the injury and disease claims were prosecuted separately. We agreed, and in June, 1998, we ordered the claims to be consolidated for the entry of a combined award that incorporated the terms of the settlement agreement. Pursuant to orders that were entered on August 24 and September 24, 1999, the ALJ again determined that the claimant sustained no permanent disability from the injury and that the period of TTD ended at the same time as the employer's voluntary payments ended. The ALJ also determined that the claimant's life expectancy was 28.22 years (1,467.44 weeks) on the date of last exposure and that the employer was liable for the first 25% of those years. In other words, the employer was liable for the first 366.86 weeks of income benefits (25% of 1,467.44 weeks), for the period from August 10, 1992 to August 11, 1999. Incorporating the terms of the settlement into the combined award for the two claims, the ALJ: 1.) gave the employer credit against the initial 66 weeks of the occupational disease award for the 66 weeks of overlapping TTD benefits; and 2.) gave the employer credit for the next 78.95 weeks of occupational disease benefits by virtue of the $30,000 lump sum. The Special Fund was held liable for the remaining 75% of the claimant's life expectancy. As a result, the Special Fund was not permitted to share in the 66-week offset of occupational disease benefits; it was all credited to the employer.

The Workers' Compensation Board affirmed. Subsequently affirming, in part, and reversing, in part, the Court of Appeals pointed out a mathematical error in the ALJ's calculation and determined that the correct day for ending the employer's payment period should be the 26th of August, 1999, rather than the 11th. The Special Fund now appeals to this Court, maintaining that it does not dispute the employer's right to credit the entire $30,000 lump sum towards its occupational disease liability. It complains, however, that it was not permitted to share in the 66-week offset of occupational disease benefits that resulted due to the overlapping TTD award. Furthermore, it objects to the ALJ's refusal to apply the life expectancy table that is contained in 803 KAR 25:036 as adopted effective February 25, 1997.

■ Pointing to the fact that a dispute over the claimant's life expectancy first arose as a result of the ALJ's August 24, 1999, order, the Special Fund asserts that because 803 KAR 25:036(1) was effective at that time, the life expectancy table that accompanies the regulation should have been applied to the claimant's combined award. It maintains, therefore, that a 30.2-year life expectancy should have been used when combining the injury and disease awards on remand. We disagree.

The claimant's last exposure to coal dust occurred in 1992, at which time his life expectancy was 28.22 years. He was awarded lifetime occupational disease benefits in 1993. Although 803 KAR 25:036(1) indicates that the accompanying table is to

be used by an ALJ when computing employer and Special Fund payment periods, it also indicates, "If a claim is reopened, the table in effect on the date of the original opinion, award or order approving the settlement agreement shall continue to be utilized."

In asserting that the combined award was a new award to which the regulation applied, the Special Fund overlooks the fact that the combined injury and disease award was entered on remand from this Court. Our order of remand directed the ALJ to reopen the original award in the occupational disease claim, to reinstate the injury claim, and to enter a combined award for the two claims that took into account the overlapping benefits. The duration of the occupational disease award was not questioned in the initial proceeding, and nothing in our order of remand authorized a change in its duration when a combined award was entered. Furthermore, we read 803 KAR 25:036(1) as indicating that the accompanying table was not intended to apply to a claim that arose and was decided before the regulation was adopted.

■ Next, we turn to the apportionment of the combined award in view of the fact that the employer was liable for the entire TTD award but was only 25% liable for the occupational disease award. Like the instant case, *Beale v. Robinson*, Ky., 822 S.W.2d 856 (1991), concerned injury and occupational disease claims that arose on the same date and were apportioned differently. There, the worker was awarded TTD and permanent, partial disability benefits for an injury for which the employer bore the entire liability. He was also awarded partial disability benefits for pneumoconiosis, apportioned 25% to the employer and 75% to the Special Fund. Recognizing that he could not receive benefits for more than total disability at any

given time, he sought to have payment of the pneumoconiosis award delayed until after the period of TTD for the injury had expired. We pointed out, however, that KRS 342.316 requires an award of income benefits for occupational disease to commence on the date of last exposure and determined that he was entitled to receive only the TTD benefit during the 38 weeks that the two awards overlapped. Thus, the effective duration of the occupational disease benefit was 387 weeks rather than 425 weeks, and the value of the occupational disease benefit was less than it would have been absent the overlapping TTD award.

*Beale v. Robinson* did not address whether the relative liabilities for pneumoconiosis benefits should be determined before or after the TTD offset was taken into account because that question was not raised. Furthermore, when framing the issue, the parties recognized that the manner of apportioning an occupational disease award that is wholly or partially offset by an overlapping injury award was governed by *Island Creek Coal Co. v. Davis*, Ky. App., 761 S.W.2d 179 (1988). See *Beale v. Robinson, supra,* at 856. In *Island Creek Coal Co. v. Davis*, the employer and Special Fund bore equal liability for a 425-week award for a partially disabling injury, and they bore 25%/75% liability for a lifetime award for a totally disabling occupational disease. Although the claims arose on different dates, the period of the injury award overlapped part of the period of the occupational disease award, and most of the overlap occurred during the employer's payment period for occupational disease. Thus, a question arose concerning whether the employer was responsible for the first 25% of the worker's life expectancy or for 25% of the occupational disease benefits. Citing KRS 342.316 and KRS 342.120 as well as the decisions in *United States Steel*

*Corp. v. Wells*, Ky.App., 650 S.W.2d 264 (1983), and *Estep Coal Co. v. Ward*, Ky., 421 S.W.2d 367 (1967), the Court concluded that the employer was liable for 25% of the occupational disease benefits that the worker would receive. The courts have applied this same principle in numerous instances over the years. See, for example, *Coots v. Whittaker*, Ky., 998 S.W.2d 491 (1999)(employer and Special Fund share in offset where award for partially disabling injury overlaps award for totally disabling pneumoconiosis, and the employer settles the claims); *Beale v. Shepherd*, Ky., 809 S.W.2d 845 (1991)(employer and Special Fund share in offset where award for partially disabling injury overlaps award for totally disabling pneumoconiosis); *Newberg v. Parsons*, Ky.App., 852 S.W.2d 336 (1992)(employer and Special Fund share in offset where award for TTD overlaps award for partially disabling pneumoconiosis).

■ Although the amount and character of the claimant's injury award are different from those that were present in *Island Creek Coal Co. v. Davis*, the rationale that supported the decision applies to these facts. Furthermore, at the time of the claimant's last exposure to coal dust, KRS 342.316(10) provided for 25%/75% apportionment of "compensation" for occupational disease. We conclude, therefore, that where benefits that are payable under an injury award offset benefits that would otherwise be due for occupational disease, it is the compensation that the worker will actually receive for the occupational disease that must be apportioned, not the number of weeks of the award. In the instant case, that amount is calculated as follows:

| | |
|---|---|
| Value of pneumoconiosis award (1,467.44 wks. × $380.00) | $557,627.20 |
| LESS: overlapping TTD for injury | − 25,080.00 |
| EQUALS: effective amount of pneumoconiosis award | $532,547.20 |
|     Employer's share (25%): $133,136.80 | |
|     Special Fund's share (75%): $399,410.40 | |
|     TOTAL: $532,547.20 | |

In summary, the period of the claimant's pneumoconiosis award began on August 10, 1992, but benefits that would otherwise have been due under the award were offset by the TTD benefits that were paid by the employer from August 10, 1992 to November 14, 1993. *Beale v. Robinson, supra.* The employer's obligation to begin to pay its 25% share of occupational disease benefits began on November 15, 1993, and when paid at the rate of $380.00 per week, its liability extended for the following 350.36 weeks. Under the terms of its settlement with the claimant, the employer is entitled to credit the $30,000 lump sum against the initial weeks of its occupational disease liability as follows:

| | | |
|---|---|---|
| Employer's share (25%) = | $133,136.80 = | 350.36 weeks @ $380 |
| LESS: lump sum paid | − 30,000.00 = | − 78.95 weeks @ $380 |
| Balance due: | $103,136.80 = | 271.41 weeks @ $380 |

After the 350.36–week period has expired, and the employer has paid 25% of the occupational disease benefits, the Special Fund must begin to pay its share.

The decision of the Court of Appeals is reversed, and this matter is remanded to

the ALJ for the entry of an award as set forth in this opinion.

All concur.