Charles Alex **KIMBROUGH**, Appellant,

v.

**COMMONWEALTH** of Kentucky, **CHILD SUPPORT DIVISION** ex rel. Shantrece Laniece **BELMAR**, Appellee.

No. 2005–CA–001532–MR.

Court of Appeals of Kentucky.

July 21, 2006.

Discretionary Review Denied by Supreme Court March 14, 2007.

---

Teddy B. Gordon, Louisville, KY, for appellant.

Laura P. Russell, Louisville, KY, for appellee.

Before HENRY and SCHRODER, Judges; EMBERTON,[1] Senior Judge.

## OPINION

SCHRODER, Judge.

This is an appeal from an order denying a father's motion to set aside a prior order granting the mother's motion for an increase in child support. The father argues that KRS 403.212(2)(g)(4) is unconstitutional as a violation of equal protection because it favors prior-born children over later-born children. He also argues that KRS 403.212(2)(g)(4) as applied in this case denies him due process of law because his child support obligation has been increased directly as a result of the failure of the father of the other parent's prior-born child to pay child support. We reject both constitutional challenges and, thus, affirm.

This case began as a paternity action filed in 1995 by the mother, Shantrece Belmar, against Charles Alex Kimbrough regarding two children, Charles Kimbrough, born March 2, 1994, and Charnasia Kimbrough, born March 3, 1995. Paternity was established and a child support order was entered requiring Charles to pay $62.25 a week. On March 15, 2005, Shantrece filed a motion for an increase in child support for child care costs and health care coverage. On June 20, 2005, the court entered an order increasing Charles' child support obligation to $141.52 a week. On June 29, 2005, Charles filed a motion pursuant to CR 59.05 to set aside

or modify the June 20, 2005, order. In the memorandum of law submitted in support of the CR 59.05 motion, Charles argued, apparently for the first time in the case, that KRS 403.212(2)(g)(4) was unconstitutional because it violated the equal protection and due process clauses of the United States and Kentucky Constitutions. Charles maintains that the statute is unconstitutional insofar as it allows the custodial parent to deduct an imputed child support amount for prior-born children in determining that parent's gross income for purposes of calculating child support for later-born children. On July 12, 2005, the court entered an order denying the motion.[2] This appeal by Charles followed.

Charles' primary argument on appeal is that KRS 403.212(2)(g)(4) is unconstitutional as a violation of both the United States and Kentucky Constitutions' right to equal protection and due process of law. The two factors used to determine the amount of child support under the guidelines in KRS 403.212 are "combined monthly adjusted parental gross income" and the number of children. KRS 403.212(2)(g) provides in pertinent part:

"Combined adjusted parental gross income" means the combined gross incomes of both parents, less any of the following payments made by the parent:

. . .

4. A deduction for the support to the extent payment is made, if a parent is legally responsible for and is actually providing support for other prior-born children who are not the subject of a

1. Senior Judge Thomas D. Emberton sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. Unfortunately, the family court denied the motion summarily without any explicit ruling on the constitutionality issue, providing this Court with no guidance or reasoning for its ruling.

particular proceeding. If the prior-born children reside with that parent, an "imputed child support obligation" shall be allowed in the amount which would result from application of the guidelines for the support of the prior-born children.

At the time of the motion for increase in support in this case, Shantrece had a 15–year–old child from a prior relationship of whom she had custody, and Charles had an 8–month–old child for whom he was financially responsible who resided with him in a current relationship. According to Charles, there was a child support order in the sum of $50 per week to be paid by the biological father of Shantrece's 15–year–old child. However, the biological father of the child was apparently incarcerated and not paying child support. Thus, in determining Shantrece's monthly adjusted parental gross income for purposes of calculating child support for the two later children, the court allowed Shantrece to deduct $413 as imputed child support for the prior-born child under KRS 403.212(2)(g)(4). This effectively increased the percentage of total child support that Charles was ordered to pay, and resulted in an increase of $50 a week in child support. Whereas, under that same statute, Charles was not entitled to deduct any imputed child support for his later-born 8–month–old child.

Charles argues that because KRS 403.212(2)(g)(4) allows the parent of a prior-born child to deduct imputed child support, but does not allow the same deduction for the parent of a later-born child whom the parent is financially responsible for, the statute denies the parent of the later-born child equal protection under the law. Charles also argues that it denies the later-born child equal protection because there are less financial resources available for the later-born child, effectively giving a benefit to the prior-born child at the detriment of the later-born child. Further, Charles argues that he is being denied his property without due process of law because he is essentially being forced to pay a greater amount of child support because the father of the prior-born child is incarcerated and is not paying child support, and Charles has no way to challenge the father's failure to comply with the child support order.

 A statute carries a strong presumption that it is constitutional. *Wynn v. Ibold, Inc.*, 969 S.W.2d 695 (Ky.1998). When the constitutionality of a statute is challenged, it is the appellate court's responsibility to "draw all reasonable inferences and implications from the act as a whole and thereby if possible sustain the validity of the act." *Graham v. Mills*, 694 S.W.2d 698, 701 (Ky.1985). The burden of establishing unconstitutionality of a statute rests upon the party challenging it. *Stephens v. State Farm Mut. Auto. Ins. Co.*, 894 S.W.2d 624 (Ky.1995).

 In analyzing the equal protection argument, we apply the rational basis standard of review because the claim does not involve a suspect classification or a fundamental right. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *Earthgrains v. Cranz*, 999 S.W.2d 218 (Ky. App.1999), *overruled on other grounds*, *City of Louisville v. Slack*, 39 S.W.3d 809 (Ky.2001). Under the rational basis standard, this Court must uphold a statute if the statutory classification bears some rational relationship to a legitimate state purpose. *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972). A law will be upheld under the rational basis test if there is any conceivable rational basis for the classes it creates. *Keith v. Hopple Plastics*, 178 S.W.3d 463 (Ky.2005).

So the question before this Court is, is there a rational basis for allowing parents to deduct imputed child support for prior-born children in computing that parent's gross income under KRS 403.212? In viewing the language of KRS 403.212(2)(g)(4), it is clear that the purpose of the legislation was to ensure that parents had sufficient financial resources to meet the needs of prior-born children before setting child support for later-born children. We note that this is a question of first impression in Kentucky, and there is little case law on the issue from other jurisdictions.

In *Feltman v. Feltman*, 434 N.W.2d 590 (S.D.1989), the Supreme Court of South Dakota upheld a similar provision in its child support guidelines, adjudging that the provision was rationally related to the state's interest in requiring parents to support all of their children and in protecting the welfare of the children, which includes their standard of living. The Court acknowledged that application of the provision could result in later-born children receiving a lesser amount of economic support than prior-born children. *Id.* at 592. However, the Court noted that "[i]f the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' " *Id.* at 592–93 (quoting *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501–02 (1970)). The Court went on to defend the state's justification for enacting the provision:

> The support format set forth in SDCL 25–7–7 provides a fair and logical prioritization of claims against a noncustodial parent's income. Without prioritization, the children from the first family might find their standard of living substantially decreased by the voluntary acts of a noncustodial parent. A noncustodial parent who becomes responsible for supporting the children of a second marriage does so with the knowledge of a continuing responsibility to the children of the first marriage.

*Id.* at 593.

Similarly, in Florida, the Court found that a rational basis existed for a statute precluding a decrease in child support for prior-born children because the obligor parent has subsequent children. *Pohlmann v. Pohlmann*, 703 So.2d 1121 (Fla. App.1997). "The statute assures that noncustodial parents will continue to contribute to the support of their children from their first marriage notwithstanding their obligation to support children born during a subsequent marriage." *Id.* at 1124–25.

And more recently, the Tennessee Supreme Court upheld as constitutional a provision in the child support guidelines allowing the amount of an existing child support order to be deducted in determining that parent's net income, but not taking into consideration children of that parent who are not included in the decree of child support. *Gallaher v. Elam*, 104 S.W.3d 455 (Tenn.2003). The Court noted that "the obligor's children who are not receiving support pursuant to a court order and who live with the obligor inherently benefit from the obligor's household expenditures. Children who do not live with the obligor do not enjoy this benefit." *Id.* at 462. The Court also looked to the fact that the deviation from the guidelines is allowed in cases of extreme economic hardship. *Id.*

We agree with the above courts that the state's interest in seeing that prior-born children are provided for is a rational basis for the provision at issue in KRS 403.212(2)(g)(4). Clearly, the intention of the statute is not to deny financial resources to later-born children, but rather

to make sure prior-born children are being supported. While in some cases application of the statute may result in later-born children having access to fewer financial resources than prior-born children, "[e]qual protection does not require there to be a perfect fit between means and ends." *Keith v. Hopple Plastics,* 178 S.W.3d 463, 466 (Ky.2005) (citing *Heller v. Doe,* 509 U.S. 312, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)). And in areas of social welfare and economic legislation, the question is not whether the statute is ideal or could be more just. *Id.* (citing *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)). We would also note that just because a deduction for imputed child support for prior-born children is allowed, it does not necessarily follow that in every case there will be insufficient financial resources for later-born children. Indeed, in the present case, Charles does not allege that he cannot provide for his 8–month–old child, only that there are less financial resources available for the later-born child. As pointed out by the Tennessee Court, because the 8–month–old child lives with Charles, that child gets the benefit of household expenditures as well. And, in the event there are extraordinary circumstances, KRS 403.211(2) and (3) permit deviation from the guidelines where "application of the guidelines would be unjust or inappropriate."

◼ Charles' next argument is that KRS 403.212(2)(g)(4) as applied in this case violated his due process rights when he was required to pay increased child support because the father of Shantrece's prior-born child was incarcerated and not paying child support. Charles claims that Shantrece was allowed to deduct $413 for imputed monthly child support for her prior-born child pursuant to KRS 403.212(2)(g)(4) because the father of the prior-born child was incarcerated and not able to pay his child support obligation of $50 a week. In the alternative, Charles argues that this Court should reduce Shantrece's imputed child support for the prior-born child by the $50 a week she should be receiving from the incarcerated parent.

◼ In reviewing the record in this case, there is no evidence regarding the child support calculations for Shantrece's prior-born child. There is no evidence regarding: the incarcerated father's alleged failure to pay child support; his income; how the $50 a week obligation was calculated; whether the child support order was entered prior to or after the father's incarceration; or how the failure of this incarcerated parent to pay child support actually affected the child support obligation of Charles. A copy of the child support order for the prior-born child is not even in the record before us, although both parties apparently stipulated that the father is required to pay $50 a week. All that is contained in the record before us is the worksheet for monthly child support obligation for Charles' and Shantrece's two children, dated March 15, 2005, which shows Shantrece's monthly income to be $2549.73 and a deduction of $413 for "other child support for prior born child." Presumably because this issue was not raised until the CR 59.05 motion, there appears to be no discussions or pleadings before the family court which would have clarified these facts. It is the appellant's obligation to see that the record before the appellate court is sufficient for an adequate review. *Fanelli v. Commonwealth,* 423 S.W.2d 255 (Ky.1968). And when the record before the appellate court is not complete, this Court must assume that the omitted portions support the decision of the trial court. *Commonwealth v. Thompson,* 697

S.W.2d 143 (Ky.1985). In the absence of evidence in the record supporting Charles' claim that he is being forced to pay increased child support because the father of Shantrece's prior-born child is not paying child support, we must affirm the deduction of $413 for imputed child support for the prior-born child as allowed by the family court under KRS 403.212(2)(g)(4).

For the reasons stated above, the order of the Jefferson Family Court is affirmed.

ALL CONCUR.