**HIGHLAND HEIGHTS VOLUNTEER FIRE DEPARTMENT, Appellant,**

v.

**Gavin ELLIS; Hon. Lloyd R. Edens, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 2004–SC–0420–WC.

Supreme Court of Kentucky.

April 21, 2005.

Mary Kathryn Manis, Baird, Baird, Baird & Jones, Lexington, Counsel for Appellant.

Gregory B. Kriege, Alexandria, Counsel for Appellee.

## OPINION OF THE COURT

An Administrative Law Judge (ALJ) refused to enhance the claimant's income benefit under KRS 342.730(1)(c) on the ground that he retained the physical capacity to return to his regular employment and had done so. The Workers' Compensation Board (Board) determined that the ALJ erred by failing to base the decision on the claimant's inability to return to volunteer firefighting, the work he was performing at the time he was injured, and the Court of Appeals affirmed. We reverse.

The claimant was born in 1976. He had two undergraduate degrees, was pursuing an MBA, and was a licensed stockbroker. He had worked for Fidelity Employer Services Company, ("Fidelity"), as a retirement specialist since 1998. The work involved talking to customers on the telephone and operating a computer at the company's call center. At the time of his injury, he earned $512.24 per week.

The claimant had training as an EMT and had been a firefighter with the Highland Heights Volunteer Fire Department since 1999. He received no compensation for doing so. On April 9, 2000, he was injured while participating in a training exercise involving a basement fire. While

he was standing on the stairwell feeding hose, the flames became very intense. An order was given to clear the area, but the basement door would not open causing him to fear for a time that he would be trapped and die. Although he was able to escape through a broken window, he fell about seven to eight feet to the ground, landing on his respirator and snapping his neck. He was taken by ambulance to the University Hospital Burn Center where he was treated for three days before being released to two or three weeks of in-home treatment. His workers' compensation claim alleged a cervical injury, burns, and a psychiatric condition.

On April 17, 2002, Dr. Kagan reported that the claimant sustained second degree burns over 2% of his body and assigned a 1% impairment. He imposed no work restrictions and stated that the claimant had the physical capacity to return to the type of work performed at the time of injury. Although he indicated that the claimant had not described the physical requirements of his work, Dr. Kagan listed the claimant's job title as "firefighter."

On August 2, 2000, Dr. Marcom, a chiropractor, reported that the claimant had a mild reversal of the lordosis of the cervical spine and assigned a 5% impairment. He noted that the claimant described the physical requirements of his usual work as sitting at a computer and using a telephone. He imposed no work restrictions and indicated that the claimant retained the physical capacity to return to the type of work performed at the time of injury.

On October 14, 2002, Dr. Larkin examined the claimant on the employer's behalf. In his opinion, the claimant sustained a cervical thoracic neck strain that had resolved although there was occasional muscle guarding. Dr. Larkin assigned a 5% impairment, imposed no work restrictions, and indicated that no further treatment was warranted at the time.

The claimant sought treatment from Dr. Tangbald, a psychiatrist, on October 9, 2000. Dr. Tangbald diagnosed post-traumatic stress disorder for which he prescribed psychotropic medication. Beginning on October 16, 2000, a licensed clinical social worker who was associated with Dr. Tangbald provided psychotherapy. As of August 14, 2001, Dr. Tangbald continued to treat the claimant with medication for post-traumatic stress disorder.

The claimant introduced an April 19, 2002, evaluation by Dr. Parsons, a psychologist. He reported that the claimant continued to suffer from post-traumatic stress disorder and assigned a 25% impairment. In his opinion, the condition would prevent the claimant from working as either a fireman or EMT.

On July 20, 2002, Dr. Cooley, performed a psychiatric evaluation on the employer's behalf. He diagnosed post-traumatic stress disorder that was due to the work-related incident but that had resolved causing no AMA impairment. He noted that the claimant had been weaned off medication after about a year due to its side effects. He also noted that the claimant was not currently in treatment but that he would benefit from it. Although he acknowledged that the claimant had made significant improvement, Dr. Cooley thought it unlikely that he would be able to pursue his passion for firefighting.

When the claim was heard, the claimant had returned to his work with Fidelity and earned more than he had at the time of his injury. He experienced stiffness and popping in his neck when turning his head from side to side. He continued to have occasional flashbacks and difficulty sleeping. He stated that the psychological effects of the accident were the most problematic. He could not take hot showers or sit in a hot tub or sauna. He became nauseous from the smell of Dial soap,

which had been used to scrub his skin during treatment of his burns. Although he enjoyed firefighting, he did not think he could return to it.

The ALJ determined that the claimant sustained work-related physical and psychological injuries for which he was entitled to medical and temporary total disability benefits. Although convinced that the claimant sustained a 6% AMA impairment due to the burns and cervical injury, the ALJ noted that he had not received psychological or psychiatric treatment for a year and determined that the psychiatric condition caused no impairment at the present time. Based on the claimant's earnings at Fidelity, the ALJ determined that his average weekly wage was $512.24 and that his permanent income benefit must be reduced by a factor of 0.5 under KRS 342.730(1)(c)2. Finally, the ALJ concluded that the claimant was not entitled to an enhanced award under KRS 342.730(1)(c)1. because he retained the physical capacity to return to his regular employment, which involved using a computer and telephone.

When the claimant was injured, the 1996 version of KRS 342.730(1)(c) was in effect. KRS 342.730(1)(c)1. permitted an income benefit to be enhanced by a factor of 1.5 if the injured worker did not "retain the physical capacity to return to the type of work that [he] performed at the time of injury." KRS 342.730(1)(c)2. required an income benefit to be reduced by a factor of 0.5 if the worker had returned to work at a wage that equaled or exceeded the wage at the time of the injury. It is undisputed that subsection (1)(c)2. applies because the claimant returned to his regular work at Fidelity. At issue is whether the claimant's inability to work as a volunteer firefighter due to his psychological injury also requires the application of subsection (1)(c)1.

Just as under previous versions of the Act, the purpose of awarding an income benefit under the 1996 version is to compensate workers for a loss of wage-earning capacity due to industrial injury; therefore, KRS 342.730 bases the amount of a worker's benefit on the average weekly wage and the amount of occupational disability the injury causes. *See Adkins v. R & S Body Company,* 58 S.W.3d 428 (Ky.2001). Chapter 342 generally does not cover individuals unless they are paid to work under a "contract of hire," but KRS 342.640(3) provides an exception for volunteer fire, police, and emergency personnel although their work is gratuitous or nearly gratuitous. Such individuals are covered by the Act as "deemed employees" of the political subdivision where the department for which they work is organized. KRS 342.140(3) provides that their income benefits "shall be based on the average weekly wage in their regular employment." Keeping in mind that even under KRS 342.140(3) the income benefit of volunteer personnel who have no regular employment would be zero, it is apparent that the purpose of these provisions is to compensate those who do have regular employment for a loss of the ability to perform their regular work. We conclude, therefore, that the work to be considered for the purpose of KRS 342.730(1)(c)1. is the individual's regular work, the work from which their average weekly wage is derived.

The ALJ's interpretation of KRS 342.730(1)(c)1. as it applies to the present facts was correct. There was no evidence that the claimant's injuries had any effect on his ability to return to his regular work. In fact, he returned to his regular employment and earned a greater average weekly wage than when he was injured; therefore, he was not entitled to an enhanced benefit. Under the circumstances, it is unnecessary to consider whether KRS 342.730(1)(c)1.

permits compensation for a loss of the psychological capacity to return to the type of work that was performed at the time of injury.

The decision of the Court of Appeals is reversed, and the decision of the ALJ is reinstated.

All concur.