LOWE'S # 0507, Appellant,

v.

James A. GREATHOUSE; Hon. Lawrence F. Smith, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2005–SC–0515–WC.

Supreme Court of Kentucky.

Jan. 19, 2006.

Charles E. Lowther, Boehl, Stopher & Graves, LLP, Lexington, KY, for Appellant.

Kenneth B. Fouts, II, Bussey & Fouts, Lexington, KY, for Appellee, James A. Greathouse.

## OPINION OF THE COURT

KRS 342.730(1)(c)1 permits an injured worker's income benefit to be tripled if the worker "does not retain the physical capacity to return to the type of work that the employee performed at the time of injury." The claimant was injured while working for the defendant-employer. Although he remained physically capable of performing that job, he lacked the physical capacity to return to his concurrent job for a different employer. Convinced that KRS 342.730(1)(c)1 refers to work performed in the employment in which the injury occurred, an Administrative Law Judge (ALJ) refused to enhance the claimant's income benefit. The Workers' Compensation Board affirmed, but the Court of Appeals relied upon *Highland Heights Volunteer Fire Department v. Ellis*, 160 S.W.3d 768 (Ky.2005), and reversed. We reverse.

In 1987, the claimant began working full time for Lowe's, as a salesperson in one of its home-improvement stores. Since 1989, he had also worked as a printing press operator for Mini–Data Forms. It is undisputed that the physical demands of the latter job were different from those of his job for Lowe's and that Lowe's knew of the concurrent employment.

The claimant injured his wrist in July, 2001, while working for Lowe's, and later underwent fusion surgery. An ALJ determined subsequently that the injury was partially disabling and resulted in a 12% impairment. At the time, the claimant's average weekly wage from Lowe's was $420.00; his average weekly wage from Mini–Data Forms was $497.75; but KRS 342.730(1)(b) limited the maximum average weekly wage for calculating his partial disability benefit to $397.00.[1] The ALJ determined that although the injury prevented the claimant from returning to his work for Mini–Data Forms, he was ineligible for the "3 multiplier" permitted by KRS 342.730(1)(c)1 because he had returned to his work for Lowe's, earning the same or greater wages.

In concluding that the decision in the present case was erroneous, the Court of Appeals relied upon *Highland Heights Volunteer Fire Department v. Ellis, supra,* which concerned a volunteer fireman who was injured while fighting a fire. After the injury, he was able to return to his paid employment as a licensed stockbroker but lacked the physical capacity to return to firefighting. On that basis, he asserted that he was entitled to an enhanced award, but this Court disagreed.

The *Ellis* court noted that individuals who do not work under a "contract of hire" are not covered by the Act; however, KRS 342.640(3) provides coverage for volunteer fire, police, and emergency personnel by deeming them to be employees of the political subdivision that they serve. Under KRS 342.140(3), the average weekly wage for calculating such an individual's benefits is "the average weekly wage in their regular employment." The court noted that an individual who is injured while performing volunteer fire, police, or emergency work

---

1. Although KRS 342.140(5) permits a worker's earnings from concurrent employments of which the defendant-employer has knowledge to be included in an injured worker's average weekly wage, KRS 342.730(1)(a) and (b) place a cap on the average weekly wage from which benefits may be calculated.

but has no paid employment will receive no income benefit. It determined, therefore, that the purpose of KRS 342.640(3) and KRS 342.140(3) is to compensate those individuals who do have regular (*i.e.*, paid) employment for a loss of the ability to perform that work. Therefore, the work to be considered for the purpose of KRS 342.730(1)(c)1 is not the gratuitous work but "the individual's regular work, the work from which their average weekly wage is derived." *Id.*, 160 S.W.3d at 770. Mr. Ellis returned to his regular work as a stockbroker, therefore, he was not entitled to an enhanced benefit.

The present case does not involve an injury that occurred in a gratuitous employment and caused a physical incapacity to perform that employment. It involves two paid employments. Yet, the Court of Appeals applied the cited language from *Ellis* literally, without considering the context in which it was used. As a result, the court determined that the claimant was entitled to have both of his employments considered for the purposes of KRS 342.730(1)(c)1 because KRS 342.140(5) included his wages from both. We disagree.

As amended effective July 14, 2000, KRS 342.730(1)(c) provides:

1. If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three (3) times the amount otherwise determined under paragraph (b) of this subsection, but this provision shall not be construed so as to extend the duration of payments; or

2. If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability shall be determined un-

der paragraph (b) of this subsection for each week during which that employment is sustained. During any period of cessation of that employment, temporary or permanent, for any reason, with or without cause, payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable under paragraph (b) of this subsection. This provision shall not be construed so as to extend the duration of payments.

3. Recognizing that limited education and advancing age impact an employee's post-injury earning capacity, an education and age factor, when applicable, shall be added to the income benefit multiplier set forth in paragraph (c)1. of this subsection. If at the time of injury, the employee had less than eight (8) years of formal education, the multiplier shall be increased by four-tenths (0.4); if the employee had less than twelve (12) years of education or a high school General Educational Development diploma, the multiplier shall be increased by two-tenths (0.2); if the employee was age sixty (60) or older, the multiplier shall be increased by six-tenths (0.6); if the employee was age fifty-five (55) or older, the multiplier shall be increased by four-tenths (0.4); or if the employee was age fifty (50) or older, the multiplier shall be increased by two-tenths (0.2).

4. Notwithstanding the provisions of KRS 342.125, a claim may be reopened at any time during the period of permanent partial disability in order to conform the award payments with the requirements of subparagraph 2. of this paragraph.

KRS 342.730(1)(b) sets forth the basic income benefit for partial disability. When KRS 342.140(5) and KRS 342.730(1)(b) are considered together, it is

apparent that the purpose for including concurrent earnings in the average weekly wage does not extend to all partially disabled workers who perform concurrent jobs. We reach that conclusion because although KRS 342.140(5) permits earnings from a concurrent employment to be included in the average weekly wage, KRS 342.730(1)(b) places a cap on the average weekly wage from which a partial disability benefit may be calculated.[2] It appears, therefore, that the purpose for KRS 342.140(3) is more specific, *i.e.*, to account more nearly for the earning capacity of those who perform more than one low-wage or part-time job.

KRS 342.730(1)(c)1 provides a triple benefit for a loss of the physical capacity to perform "the type of work that the employee performed at the time of injury." It does not refer to the capacity to perform other types of work. At the time of his injury, the claimant was working in retail sales for Lowe's. His work for Mini–Data Forms was to operate a printing press. Absent an explicit indication that the legislature intended for other types of work to be considered for the purposes of KRS 342.730(1)(c)1, we are not convinced that he is entitled to a triple benefit based on a loss of the physical capacity to operate a printing press.

The decision of the Court of Appeals is reversed.

COOPER, JOHNSTONE, ROACH, and WINTERSHEIMER, JJ., concur.

GRAVES, J., dissents by separate opinion in which LAMBERT, C.J., and SCOTT, J., join.

Dissenting opinion by Justice GRAVES.

Most recently, a majority of this Court reiterated the underlying remedial purpose of the Workers' Compensation Act:

Workers' compensation is a form of social welfare legislation. Its purpose is to require employers to provide necessary medical treatment for workers who are injured in the course of their employment and to replace some of the income they will lose, thereby enabling them to meet their own essential needs and those of their dependents.

*Keith v. Hopple Plastics,* 178 S.W.3d 463 (Ky.2005) (rendered Nov. 23, 2005, but not yet final). Long standing case law has emphasized that the Act is to be liberally construed in order to achieve its humanitarian design. Because the majority's holding in this case is inconsistent with the plain meaning commanded by the relevant statutes and the objectives set forth above, I respectfully dissent.

Appellee, James Greathouse, earned his income for many years through concurrent employment. As we observed in *Keith v. Hopple Plastics, supra,* it is not unusual for workers to derive their income from more than one source (or in this case, from more than one employer) in order to make a living. Indeed, the Act anticipates and endorses this concurrent employment scenario by including all such wages within the computation of an employee's average weekly wage. KRS 342.140(5). This average weekly wage computation, in turn, was used to determine the amount of permanent partial disability benefits to which Appellee was entitled. KRS 342.730(1)(b).

Although concurrent employment was expressly endorsed and considered when

---

**2.** Under KRS 342.730(1)(b), the maximum average weekly wage to be used when calculating a partial disability benefit is 75% of the state's average weekly wage. In July, 2001, that amount was $397.00, which was less than the claimant's earnings from either job, alone. Therefore, despite KRS 342.140(5), his earnings from Mini–Data Forms had no effect on the benefit that was calculated under KRS 342.730(1)(b).

computing Appellee's average weekly wage (and, in turn, his base permanent partial disability benefits pursuant to KRS 342.730(1)(b)), this Court unreasonably concludes that this same concurrent employment shall *not* be considered when determining whether he is entitled to have his base permanent partial disability benefits enhanced. The sole reason given by the majority for denying Appellee's entitlement to this enhancement is that KRS 342.730(1)(b) limits the amount of average weekly wage any employee may claim as partial disability benefits to no more than 75% of the average weekly wage of the state.[1] *Ante,* at 525. The majority then reasons that since such a low cap has been placed on the amount of benefits that any employee is entitled to claim, KRS 342.140's specific endorsement and consideration of concurrent employment must be limited to include only "low-wage" or "part-time" workers. *Ante,* at 527.

The majority's analysis cannot be reasonably supported, however, when it is viewed in light of the entire Act. First, although the amount of benefits one may be entitled to under the Act are capped (or otherwise considered low by some living standards), no injured worker may be disqualified from collecting the capped benefits simply because his income at the time of injury exceeded the cap. Second, and more importantly, the cap imposed by KRS 342.730(1)(b) has no relevancy whatsoever to whether an employee's benefits therein may be enhanced pursuant to KRS 342.730(1)(c)(1). Rather, the relevant question under KRS 342.730(1)(c)(1) is whether the employee retains "the physical capacity to return to the type of work that the employee performed at the time of injury." When an injured employee lacks the physical capacity to return to the type of work that has previously enabled him to meet his "own essential needs and those of [his] dependents," *Keith v. Hopple Plastics, supra,* he is entitled to receive an enhanced benefit to account for this loss of earning capacity. *See Marsh v. Mercer Transp.,* 77 S.W.3d 592, 595 (Ky.2002).

In this case, Appellee depended on both of his jobs for sustenance; however, a workplace injury at the site of one of these jobs prevented his working at the other site. Although Appellee has lost the capacity to earn a substantial portion of his livelihood, he is being penalized for continuing to perform what work he is able to do. The majority's holding results in a disproportionate sacrifice on those least able to afford it in spite of the specific and clear language set forth in KRS 342.140(5), which recognizes and accommodates the need for some employees to maintain two or more jobs in order to earn a decent and respectable living.[2]

The majority's alternate argument is that the language utilized in KRS 342.730(1)(c)(1) only applies to workers who are unable to return to the employment in which the injury occurred. Thus, since Appellee's injury did not prevent him from returning to Lowes (the job in which the injury occurred), he is barred from receiving an enhanced benefit to account for his loss of earnings capacity in the concurrent employment (the printing press job). When considered in light of the entire Act, this interpretation similarly reveals itself to be misplaced.

---

**1.** The majority notes that as of July 2001, the state's maximum permanent partial disability benefit of $397 was based on 75% of the state's average weekly wage of $530.07.

**2.** It cannot be said that compensating Appellee is unfair to the employer in this instance since it is undisputed that Lowe's had knowledge of Appellee's concurrent employments and of KRS 342.140(5).

We have previously said that "[t]he purpose of KRS 342.140 is to estimate the injured worker's earning capacity." *Marsh, supra* at 595. The injured worker's overall earning capacity is, in turn, employed to determine the total benefits the injured worker is entitled to receive under KRS 342.730. Consistent with their integrated roles, KRS 342.140's focus on an employee's overall earning capacity is also reflected in KRS 342.730(1)(c)(1). The statute says nothing about the employee being entitled to an enhanced benefit only if he is unable to return to the specific employer or employment in which he was injured, but rather it simply requires that the injured worker be unable to return "to the type of work that the employee performed at the time of injury." Thus, when the view commanded by the plain language of its companion statute, KRS 342.140, is considered in conjunction with the plain language of the statute itself, the majority's view of KRS 342.730(1)(c)(1) is clearly too narrow as it unfairly deflates benefits, thus penalizing those least able to afford a loss of income.

When all the relevant statutes are read in context of the entire Act and in light of the humanitarian and remedial purposes of the Worker's Compensation Act, I can find no valid grounds on which to justify the majority's decision. Unfortunately, the result in this case is not only erroneous as a matter of law, but also distorts the purpose and intent of the Act. Accordingly, I must respectfully dissent.

LAMBERT, C.J., and SCOTT, J., join this dissenting opinion.