Lowell MILLER, Appellant,

v.

SQUARE D COMPANY; Hon. Shiela C. Lowther, Administrative Law Judge; Workers' Compensation Board, Appellees.

No. 2007–SC–000361–WC.

Supreme Court of Kentucky.

April 24, 2008.

David B. Allen, Versailles, KY, for Appellant, Lowell Miller.

Carl Martin Brashear, Hoskins Law Offices, PLLC, Lexington, KY, for Appellee, Square D Company.

## OPINION OF THE COURT

KRS 342.730(1)(c)1 permits an injured worker's income benefit to be tripled if the worker "does not retain the physical capacity to return to the type of work that the employee performed at the time of injury." If an injured worker returns to work at the same or a greater average weekly wage, KRS 342.730(1)(c)2 permits a double benefit during any period of cessation of that employment.

An Administrative Law Judge (ALJ) determined that the claimant was not entitled to an enhanced benefit under either statute because he could perform the mold technician job in which he was injured but earned a lower average weekly wage because he could no longer perform voluntary overtime work in the assembly department. A two-to-one decision by the Workers' Compensation Board vacated and remanded for further consideration of the claimant's ability to perform the specific jobs or tasks that he was able to perform at the time of the injury under *Ford Motor Co. v. Forman,* 142 S.W.3d 141 (Ky.2004). A two-to-one decision by the Court of Appeals relied on *Lowe's # 0507 v. Greathouse,* 182 S.W.3d 524 (Ky.2006), as a basis to reverse and reinstate the ALJ's decision.

We affirm insofar as the claimant retained the physical capacity to perform his duties as a mold technician but reverse and remand for the ALJ to consider his physical capacity to perform his duties as an assembler. Unlike the situation in *Lowe's # 0507 v. Greathouse, supra,* the claimant worked for one employer. He performed two different jobs at the time of injury, each with different duties. KRS 342.730(1)(c)1 includes both sets of duties.

The claimant was born in 1950, has a high school education, and has worked for the defendant-employer since 1969. His job as a mold technician required him to make certain that all of the machines in the mold department were running properly. He injured his back on May 19, 2004, while lifting a tool box in the course of his duties. After surgery and physical therapy, he returned to work as a mold technician in September 2004. He continued to work in that capacity when the claim was heard in November 2005.

Dr. Kiefer, the treating neurosurgeon, diagnosed a herniated disc at L5–S1 and performed a diskectomy in July 2004. He released the claimant to return to work in September 2004 with some restrictions but later removed the restrictions. On December 7, 2004, Dr Kiefer noted that the claimant's leg pain was much better. Although he continued to have some minor complaints, he was back to "running large machines and being up on his feet at work." It was "not bothering him." Dr. Kiefer released the claimant to return on an as needed basis. He stated that MMI would occur at six months post-surgery and that the claimant would retain a 10% permanent impairment rating due to the surgery.[1]

Dr. Owen evaluated the claimant in May 2005 at his attorney's request. He assigned an 11% permanent impairment rating, which included a 1% rating for pain. Dr. Owen noted that the claimant was tolerating work "fairly well but he has to

---

1. Although the claimant objected to Dr. Kiefer's report on the ground that it was signed by his physician's assistant, Dr. Kiefer stated in a supplemental report that the opinions expressed in the December 7, 2004, office note were his own. The ALJ admitted the report.

do a lot of walking which is somewhat bothersome to him." Although he assigned no work restrictions, he checked "no" when asked whether the claimant retained the physical capacity to return to the type of work performed at the time of injury.

The claimant testified that excessive walking caused his legs to cramp and that he could no longer lift fifty pounds. He stated that he now relied on a computer to determine whether machines were working properly rather than walking to inspect them and that he now used a forklift to lift heavy weights. He acknowledged, however, that the employer provided a computer to check machines before the injury and encouraged workers to use a forklift for weights over fifty pounds. He also acknowledged that he no longer took any prescription medication, had not seen a physician for back complaints for a number of months, and was not under any written restrictions from his treating physician.

The claimant testified that he worked as many as six or seven days per week and more than eight hours per day before the injury, including overtime as a mold technician and voluntary overtime as an assembler. He testified that he had attempted the assembler job once or twice after the injury but could no longer perform the necessary twisting and lifting. He stated that he now accepted mandatory overtime but accepted other overtime only "when I feel like it." He also stated that he tried to use vacation or personal time to recuperate after working mandatory overtime on a weekend. Although his hourly wage had increased since the injury, his average weekly wage had decreased slightly because he worked fewer overtime hours.

The claimant argued in his brief to the ALJ that KRS 342.730(1)(c)1 referred to all of the types of work that he performed

for the defendant-employer and that he could no longer work as an assembler. He stated that he "did not return to work at the same or greater wages" because he could no longer work as much overtime. The ALJ found Dr. Kiefer to be more persuasive and determined that the claimant retained the physical capacity to return to work as a mold technician; therefore, KRS 342.730(1)(c)1 did not apply.

KRS 342.730(1)(c) provides as follows:

1. If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three (3) times the amount otherwise determined under paragraph (b) of this subsection, but this provision shall not be construed so as to extend the duration of payments; or

2. If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability shall be determined under paragraph (b) of this subsection for each week during which that employment is sustained. During any period of cessation of that employment, temporary or permanent, for any reason, with or without cause, payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable under paragraph (b) of this subsection. This provision shall not be construed so as to extend the duration of payments.

*R.C. Durr v. Chapman,* 563 S.W.2d 743 (Ky.App.1978), explains that KRS 342.140(1) bases the average weekly wage on the worker's regular wages and includes overtime hours but at the regular rate. KRS 342.140(5) includes earnings

from concurrent employment of which the employer has knowledge.

The claimant asserts that the Court of Appeals erred in relying on *Lowe's # 0507 v. Greathouse, supra,* as a basis to reinstate the ALJ's decision. He relies on *Ford Motor Co. v. Forman, supra,* for the principle that an ALJ must determine if an injured worker lacks the physical capacity to perform the actual jobs or tasks that the worker performed at the time of the injury. Pointing to his testimony that he could no longer work as an assembler, he concludes that KRS 342.730(1)(c)1 entitles him to a triple benefit.

The employer argues that KRS 342.730(1)(c)1 refers only to "the type of work that the employee performed at the time of injury." It makes no reference to other types of work. Thus, it concerns a worker's ability to perform the job in which the injury occurred, not the ability to perform voluntary overtime in a different job.

*Lowe's # 0507 v. Greathouse, supra,* concerned an individual who worked concurrently as a salesperson for Lowe's and as a printing press operator for another employer. The injury occurred at Lowe's. Noting that Greathouse's earnings from Lowe's, alone, exceeded the state's average weekly wage and also that he returned to work at Lowe's earning the same or a greater wage, the ALJ determined that he was ineligible for the "3 multiplier" although he lacked the physical capacity to operate a printing press. The court agreed, distinguishing *Highland Heights Volunteer Fire Dept. v. Ellis,* 160 S.W.3d 768 (Ky.2005), which involved a gratuitous employment. The court determined that the apparent reason for including earnings from concurrent employment in the average weekly wage calculation was to account more nearly for the earning capacity of workers who perform more than one low-wage or part-time job. Noting that KRS 342.730(1)(c)1 refers to the type of work performed at the time of injury, the court determined that it does not include the capacity to perform other types of work absent an explicit indication that the legislature intended for other types of work to be considered. The court rendered the decision in January 2006, and the statute has not been amended.

*Lowe's # 0507 v. Greathouse, supra,* is consistent with two earlier decisions concerning concurrent employments under the 1996 Act. Like *Lowe's,* they focus on the employment in which the injury occurred. In *Robertson v. United Parcel Service,* 64 S.W.3d 284 (Ky.2001), the court determined that an employer is not required to pay temporary total disability (TTD) benefits to an individual who can return to work but lacks the physical capacity to perform concurrent work for another employer. In *Double L Construction, Inc. v. Mitchell,* 182 S.W.3d 509 (Ky. 2005), the court determined that the employment in which the injury occurred is the relevant employment for determining a worker's entitlement to TTD under *Central Kentucky Steel v. Wise,* 19 S.W.3d 657, 659 (Ky.2000). Thus, a worker who was injured performing construction carpentry and could not perform construction carpentry was entitled to TTD despite his ability to perform a concurrent janitorial job for another employer. Moreover, KRS 342.140(5) was inapplicable and the average weekly wage for calculating benefits was that from construction carpentry.

The present case does not involve concurrent employments with different employers. When a worker performs two different jobs for the same employer, the employer bears liability for an injury that occurs in either job and insures its liability based on the risks of performing both jobs. Thus, it seems more likely that

the legislature intended for the phrase "the type of work that the employee performed at the time of injury" to refer broadly to the various jobs or tasks that the worker performed for the employer at the time of injury rather than to refer narrowly to the job or task being performed when the injury occurred. We conclude, therefore, that *Lowe's # 0507 v. Greathouse*, supra, is inapplicable to these facts.

As explained in *Roark v. Alva Coal Corporation*, 371 S.W.2d 856 (Ky.1963); *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735 (Ky.App.1984); and *Snawder v. Stice*, 576 S.W.2d 276 (Ky.App.1979), the burden is on an injured worker to prove every element of a claim. This is not a case in which the employer modified the job requirements after the injury. Nor is it a case such as *Ford Motor Co. v. Forman, supra* in which a general classification included jobs with varying physical requirements. Mold technician was a specific job, and the claimant testified that only one worked each shift.

When analyzing the evidence under KRS 342.730(1)(c)(1), the ALJ noted that the claimant was injured while working as a mold technician, that he had no post-injury medical restrictions, and that he was able to return to work and perform his duties as a mold technician. The claimant acknowledged that the employer provided a computer to determine if machines were working properly before the injury and also encouraged workers to use a forklift for weights over fifty pounds. Although he stated that he did not use those aids until after the injury, the finding that he retained the physical capacity to return to work as a mold technician was reasonable under the evidence as a whole. As explained in *Special Fund v. Francis*, Ky., 708 S.W.2d 641, 643 (1986), a finding that

is reasonable may not be disturbed on appeal.

The ALJ must determine on remand whether the claimant lacks the physical capacity to work as an assembler. Based on his own testimony, the claimant asserted that he did not. He acknowledged, however, that he no longer took any prescription medication, had not seen a physician for back complaints for a number of months, and was not under any written restrictions from his treating physician. *Grider Hill Dock v. Sloan*, 448 S.W.2d 373 (Ky.1969), and *Bullock v. Gay*, 296 Ky. 489, 177 S.W.2d 883 (1944), explain that the testimony of an interested witness does not bind the fact-finder even when it is uncontradicted. Thus, the evidence would permit but does not compel a favorable finding.

The decision of the Court of Appeals is affirmed in part, reversed in part, and the claim is remanded to the ALJ for further consideration.

All sitting. All concur.