# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JUNE 16, 2016
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2015-SC-000407-WC

TWO CHICKS, LLC                                 APPELLANT


V.
              ON APPEAL FROM COURT OF APPEALS
                   CASE NO. 2014-CA-001253-WC
               WORKERS' COMPENSATION NO. 11-69759


JACQUELINE NOELLE LUNTE;
HONORABLE STEVEN BOLTON,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                 APPELLEES


### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Appellant, Two Chicks, LLC, appeals a Court of Appeals decision which reinstated an award of the three multiplier to Appellee, Jacqueline Lunte's workers' compensation benefits. Two Chicks argues that the Court of Appeals applied the wrong legal standard in reviewing the application of the three multiplier by focusing solely on whether Lunte can do the exact task she was performing when she sustained a work-related injury. KRS 342.730(1)(c)1. For the below stated reasons, we affirm the Court of Appeals.

Lunte was employed by Two Chicks as a sales clerk. Two Chicks is a boutique store which sells gifts, jewelry, purses, silver, pewter, pillows, and furniture. Lunte's job at Two Chicks involved straightening the store, stocking

shelves, pricing items, writing up sales tickets, assisting customers, and helping out when needed. Lunte stated that she had to frequently use a step stool or ladder to reach merchandise that was located above her reach. She had concurrent employment as a teacher for two-year-olds at a local school.

On October 29, 2011, Lunte was asked by a customer to get an ornament located on a Christmas tree. Lunte could not reach the ornament, so she climbed on a three-foot step stool. As she was getting off of the stool, she fell and sustained a right tibial plateau fracture. Lunte underwent surgery which involved placing several screws through the bone, using a six-hole tubular plate and a four-hole laberal plate, then reducing the fractures that had extended into the tibial plateau, and finally filling a bone-loss crack with a bone-graft substitute. An open meniscus repair was performed with sutures, but a torn patella tendon was non-repairable. Lunte filed for workers' compensation. She has not returned to work at Two Chicks, but has returned to teaching. Lunte does not believe she could return to her pre-injury job at Two Chicks without some sort of accommodation.

Karen Mayes, Two Chicks' owner and manager, testified that the role of a sales clerk is to welcome and interact with customers, suggest items to purchase, check out purchases, wrap gifts, organize and restock the store, order items, and price inventory. She stated that climbing is not an essential function of the sales clerk's job because the same item is usually found in multiple locations in the store eliminating the need to retrieve one in a high spot. While there is some merchandise which is located eight to twelve feet up

2

on the wall and on top of eight foot shelves, Mayes testified that clerks were never required to climb to retrieve items which were located above their reach. If a customer wanted an item that was up too high or too heavy, the clerk could either work with their co-workers to get it, have the customer retrieve it, have the customer return later to pick it up, or call the handyman or her husband to come in the next day to load the item. Mayes indicated that Two Chicks would be willing to accommodate Lunte's restrictions if she wanted to return to work.

Dr. Craig Roberts treated Lunte. He diagnosed her with a complex right tibial plateau fracture and a right lateral meniscus tear. He found that Lunte had an 8% whole person impairment as a result of her injuries. He stated that as a result of the accident, Lunte is unable to climb stairs or ladders. She also is unable to do repetitive deep knee bending, squatting, or heavy lifting.

After a review of the evidence, the ALJ made the following findings:

> As to the issues of [b]enefits per KRS 342.730 including extent & duration w/multiplier, I rely on the medical opinion of Dr. Craig Roberts as being the most compelling, complete, and persuasive medical evidence in the record as to the issue of [Lunte's] percentage of whole person impairment (WPI) as the direct and proximate result of her work-related injury. I have relied on that opinion in making my decision concerning that issue.
>
> Using the AMA *Guides to the Evaluation of Permanent Impairment, 5th Edition*, Table 17-10 (Page 537), Dr. Roberts determined knee flexion less than 110 degrees equals 4% whole person impairment and flexion contracture 8 degrees equals 4% whole person impairment. Using the Combined Values Chart (Page 604) he calculated these values to be summed to 8% whole person impairment, which is the WPI he assigned to [Lunte].
>
> Dr. Roberts also noted that [Lunte] will be unable to do stair and ladder climbing, repetitive deep knee bending, squatting or heavy lifting. Given the description of her job duties at [Two Chicks], it is clear that she does not retain the physical capacity to return to her employment as a retail clerk for [Two Chicks]. In

3

making that finding, I rely on the medical testimony of Dr. Roberts who assigns restrictions to [Lunte's] physical activities as well as the testimony of [Lunte] herself as to the duties she performed for [Two Chicks], which included squatting and reaching to obtain or replace merchandise on display from floor to ceiling.

I note the testimony and personal interest of [Two Chicks] who are assuredly concerned for the welfare of their employee. However, with regard to the award of a statutory multiplier, the test before me is essentially whether, due to her current physical 'condition, [Lunte] can return to the same job duties she was performing at the time of her work-related injury. This language has been construed by the Supreme Court of Kentucky as meaning the actual jobs the individual performed. *Ford Motor Co. v. Forman*, 142 S.W.3d 141 (Ky. 2004). The weight of the evidence convinces me that she cannot.

Thus, as to the application of statutory enhancement under KRS 342.730 (the "3 multiplier["]), I find the testimony of Dr. Craig Roberts to be persuasive. [Lunte] has reached MMI and her surgery was by all accounts successful.

Dr. Roberts recommended light-duty work restrictions that would preclude [Lunte] from returning to the job she had previously performed for [Two Chicks] as a retail clerk. Although Dr. Roberts did not specifically opine that [Lunte] was precluded from returning to her pre-injury work duties, the effect of his restrictions effectively does the same thing. [Lunte] has not returned to work.

Accordingly, the ALJ awarded Lunte temporary total disability benefits and permanent partial disability benefits enhanced by the three multiplier as well as medical benefits.

Two Chicks filed a petition for reconsideration arguing that the ALJ did not present adequate findings to support awarding the three multiplier to Lunte. The ALJ denied the petition and stated:

[Two Chicks] argues that significant findings do not adequately support the award of a [three] multiplier to [Lunte]. However, in its petition it points out that Dr. Roberts permanently restricted [Lunte] from climbing stairs or ladders and repetitive deep knee bending, deep knee squatting, and deep knee heavy lifting, all of which [Lunte] testified she was required to do in order

4

to perform her job. I believe that I so found in my Opinion, Award, and Order, but if I didn't then, I do now.

As to whether she had to perform these functions, she adequately testified to the fact that merchandise was strung from floor to ceiling and in order to serve customers, she had to squat and climb a ladder frequently, especially during the Christmas season.

Two Chicks appealed to the Workers' Compensation Board ("Board") which vacated the portion of the ALJ's opinion and award that granted Lunte the three multiplier. The Board found that the ALJ performed the incorrect analysis because he did not determine whether Lunte's restrictions prevent her from being able to perform all of the tasks of a sales clerk. Board member Stivers dissented from the majority but did not write an opinion.

The Court of Appeals disagreed with the Board and reinstated the application of the three multiplier to Lunte's award. The Court of Appeals held that the ALJ applied the correct legal standard when he found that Lunte could no longer perform many of the tasks associated with her pre-injury job due to her physical restrictions. Additionally, the Court of Appeals found that Lunte's testimony indicating that she did not think she had the ability to perform many of the tasks associated with her pre-injury job was persuasive and that the ALJ could rely upon it. This appeal followed.

The Board's review in this matter was limited to determining whether the evidence is sufficient to support the ALJ's findings, or if the evidence compels a different result. *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687 (Ky. 1992). Further, the function of the Court of Appeals is to "correct the Board only where the Court perceives the Board has overlooked or misconstrued

5

controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Id.* at 687-88. Finally, review by this Court "is to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *Id.* The ALJ, as fact-finder, has the sole discretion to judge the credibility of testimony and weight of evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418 (Ky. 1985). Questions of law are reviewed *de novo*. *Bowerman v. Black Equip. Co.*, 297 S.W.3d 858, 866 (Ky. App. 2009).

Two Chicks argues before this Court that the ALJ and Court of Appeals misapplied the law on the three multiplier by focusing solely on Lunte's ability to perform the task in which she was injured. KRS 342.730(1)(c)1, the three multiplier, states in pertinent part:

> If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three (3) times . . .

As used in KRS 342.730(1)(c)1, the phrase "the type of work that the employee performed at the time of injury" refers to the specific jobs or tasks that the individual performed, rather than the title of the position or the job classification. *Forman*, 142 S.W.3d at 145. In *Forman*, the claimant worked as an assembler pre-injury. After she recovered, she returned to work as an assembler, but was unable to perform all of the tasks in that classification due to her injury. The ALJ in *Forman* did not apply the three multiplier to the

claimant's award because she returned to the same job classification that she had pre-injury. However, the Board reversed, finding that the ALJ erred by using the claimant's job classification as the standard for refusing to enhance the award. The Court of Appeals affirmed. This Court, in affirming, found that the ALJ must analyze all of the evidence to determine what jobs the claimant performed at the time of her injury and then find whether she retains the physical capacity to return to those jobs. If she did not retain the physical capacity to return to those jobs, even if she returned to the same job classification, she would be entitled to the three multiplier. *Id.*

Several years after *Forman*, the Court rendered the decision of *Miller v. Square D Co.*, 254 S.W.3d 810 (Ky. 2008). In *Miller*, the ALJ found that the claimant was not entitled to the three multiplier because he could perform the mold technician job which he was performing when injured. However, pre-injury the claimant also did assembly work for the same employer which he no longer performed. The Court ultimately reversed and remanded the matter for the ALJ to consider what the claimant's physical capacity was to do assembly work. The Court found that "the phrase 'the type of work that the employee performed at the time of injury' to refer broadly to the various jobs or tasks that the worker performed for the employer at the time of injury rather than to refer narrowly to the job or task being performed when the injury occurred." *Id.* at 814.

In this matter, applying the law from *Forman* and *Miller* leads us to the conclusion that the ALJ did not misapply the law or abuse his discretion in

7

finding that Lunte is entitled to the three multiplier. In determining whether to apply the three multiplier, the ALJ must review all of the tasks that the claimant performed at the time of her injury and then determine whether she maintains the ability to perform those tasks. Here the ALJ found that Lunte had to frequently climb, squat, and lift to retrieve and shelve items which he concluded are necessary tasks of the sales clerk job. Thus, based on a detailed review of the evidence, including Dr. Roberts's restrictions and Lunte's testimony, the ALJ found that application of the three multiplier was supported because she no longer had the physical capacity to work as a sales clerk. While Mayes stated that the job of being a sales clerk at Two Chicks does not require climbing or reaching for items in high areas, Lunte's testimony rebuts Mayes. The ALJ was within his discretion to believe Lunte. We also note that even if Lunte can perform some of the tasks of being a sales clerk, the three multiplier has been applied when the claimant returns to the same job classification but is precluded from performing some of the tasks associated with it. *Forman*, 142 S.W.3d at 142.

For the above stated reasons, we affirm the decision of the Court of Appeals.

All sitting. All concur.

8

COUNSEL FOR APPELLANT,

TWO CHICKS, LLC:

Thomas L. Ferreri
Robert Frank Ferreri
Taylor Alexander Mayer


COUNSEL FOR APPELLEE,
JACQUELINE NOELLE LUNTE:

Peter J. Naake