RENDERED:  DECEMBER 1, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0995-WC

TRANE CO.                                                                                    APPELLANT

v.          PETITION FOR REVIEW OF A DECISION
OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-22-00148

GEOFFREY HAMMONS;
HONORABLE PETER GREG NAAKE,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD                                                                                       APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, COMBS, AND EASTON, JUDGES.

COMBS, JUDGE:  The sole issue on appeal is whether the Workers'

Compensation Board (the Board) erred in affirming the Administrative Law

Judge's application of the three-multiplier, KRS[1] 342.730(1)(c)1.[2]  After our review, we find no error and affirm the Board.

On February 4, 2022, the Appellee, Geoffrey Hammons, filed a Form 101/Application for Resolution of an injury claim against his employer, the Appellant, Trane Co., alleging a January 7, 2022, cumulative trauma injury to multiple body parts.  The case was litigated.  The parties submitted medical proof from Dr. Sajadi, a treating orthopedic surgeon; from Dr. Cancian, who examined Hammons at the Defendant's request; and from Dr. Gilbert, who examined Hammons at the Plaintiff's request.

On February 14, 2023, the Administrative Law Judge (ALJ) rendered an Opinion, Award and Order, as follows in relevant part:

> Hammons began working at the Trane manufacturing plant in 1985, and ceased working due to a plant-wide layoff in January 2022.  Over a period of nearly 37 years, Hammons worked on several lines in the plant, which assembles large air-handling Heating Ventilation and Air-Conditioning units. . . .
>
> Hammons testified his work on the large line and his work using the Salvagnini machine were strenuous.  These jobs began approximately ten years before the end of his career at Trane.  While working the large line, he lifted beams with other workers and handled large panels

---

[1] Kentucky Revised Statutes.

[2] The statute provides in relevant part that "[i]f, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three (3) times the amount otherwise determined under paragraph (b) of this subsection . . . ."

of sheet metal. His work using the Salvignini [*sic*] machine included repetitive heavy lifting of panels which were large and difficult to handle . . . .

Ultimately, Hammons stopped working at Trane because of a plant-wide shut down. . . .

After he was laid off in January 2022, Hammons had left shoulder replacement surgery.

The Plaintiff alleged an injury to his left shoulder as a result of cumulative trauma. . . . Dr. Sajadi performed a shoulder joint replacement surgery of Hammons' left shoulder in 2022. . . .

. . .

After carefully considering the evidence of record the ALJ is persuaded that Hammons' left shoulder degeneration was caused by his repetitive work at Trane. Dr. Sajadi's testimony is persuasive that the glenohumeral joint degeneration in Hammon's [*sic*] left shoulder caused the need for left shoulder replacement surgery. Therefore the ALJ concludes that Hammons suffered an injury within the meaning of the Act to his left shoulder, resulting in left shoulder replacement.

. . .

The ALJ finds that Hammons has a 22% permanent impairment to the body as a whole as result of his left shoulder injury and surgery, relying on Dr. Cancian's testimony concerning impairment rating applying the [American Medical Association] A.M.A. Guides to the Evaluation of Permanent Impairment, 5th Ed.

. . .

-3-

Under KRS 342.730(1)(c)(1) an employee who does not retain the physical capacity to return to the type of work that the employee performed at the time of injury due to that injury is awarded a three (3) times enhancement of his benefit for permanent partial disability otherwise determined under KRS [342.]730(1)(b). . . .

In order to apply the statute, the language of the statute and the pertinent case law requires the ALJ to analyze the actual tasks the employee performed prior to the injury, and compare them to the limitations of his or her physical capacity which result from the work-related injury. *Voith Industrial Services, Inc. v. Gray*, 516 S.W.3d 817 (Ky. App. 2017).

Dr. Cancian's testimony concerning restrictions Hammons should observe as a result of his left shoulder surgery were that he perform no overhead work, including reaching above shoulder, no reaching to shoulder level, no holding the arm in abduction or flexion, no pulling and pushing of more than 20 pounds up to 4 times an hour, lifting and carrying limited to 20 pounds 3 times an hour, and single arm upper extremity work using contralateral arm for light work only. Dr. Gilbert's testimony was consistent in that he found Hammons unable to perform the work he had performed at Trane.

The ALJ is persuaded by the opinion report of Dr. Cancian and finds that the restrictions he described prevent Hammons from performing the jobs he previously performed at Trane due to his left shoulder injury. Specifically, Hammons testified that he lifted 40 to 50 pound metal panels repetitively to place them in racks for the Salvagnini machine. Comparing the restrictions Dr. Cancian assigned to the job Hammons performed, the ALJ finds that Hammons does not retain the physical capacity to perform the type of work he was performing at the time of his injury. Further, the ALJ

-4-

relies on the report of Dr. Gilbert to find that Hammons' left shoulder injury was caused by repetitive trauma at Trane, and that therefore the restrictions resulting from his left shoulder injury and surgery are due to the work-related injury.

Accordingly, the ALJ awarded the three-multiplier under KRS 342.730(1)(c)3.

On February 27, 2023, Trane filed a Petition for Reconsideration and argued that the ALJ erred in applying the three-multiplier. Trane explained that on the Form 101, Hammons had listed January 7, 2022, as the injury date, which was his last date worked. But, at that time production had ceased at Trane, and Hammons was working as part of the clean-up crew. Trane argued that in awarding the three-multiplier, the ALJ erroneously relied upon the requirements of Hammons's job in operating the Salvagnini machine. Trane also argued that Hammons had offered no evidence that he was incapable of performing the duties involved in clean-up crew.

By Order rendered on March 20, 2023, the ALJ denied Trane's Petition as follows in relevant part:

> The Defendant argues that the Opinion, Award and Order contains patent error in applying KRS 342.730(1)(c)(1), the "triple multiplier," because the last job the Plaintiff performed for the Defendant was the clean-up crew after the plant had shut down. The Defendant contends that there was insufficient evidence to prove that Hammons could not perform the job of clean-up, and therefore the triple multiplier cannot be

-5-

applied to enhance his award. In its argument, the Defendant applies an interpretation of KRS 342.730(1)(c)(1) to mean that the "date of injury," when applied to a cumulative trauma claim, is the date the claimant last worked. The Defendant does not cite any authority for its interpretation.

KRS 342.730(1)(c)(1) states:

> If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three (3) times the amount otherwise determined under paragraph (b) of this subsection. . . .

The term "date of injury" when used in the context of a cumulative trauma claim may have several meanings. The date of injury may mean "date of manifestation" in the context of applying a statute of limitations argument, because KRS 342.185 now provides that the statute of limitations begins to run on the date the employee is told by a physician that the cumulative trauma injury is work-related. That date may be after the employee has stopped working, and therefore the same definition cannot logically be applied to KRS 342.730(1)(c)(1) when that statute refers to the time of injury. The "date of injury" listed by the Plaintiff on his Form 101 was his last date of work at Trane and was probably intended to mean the date of his last injurious exposure to cumulative trauma.

**Significantly, 342.730(1)(c)(1) does not refer to the date of injury but refers to the "time of injury." By definition, a cumulative trauma injury does not occur on a single date, but occurs gradually, over a long period of time, and may be the result of a series of traumatic events which occur at different times**. Therefore, the legislature probably did not intend to restrict the meaning of the phrase "the type of work

performed at time of the injury" to refer only to the work performed on the date of last exposure in the context of a cumulative trauma claim.

The ALJ's finding with regard to the cause of Hammons' left shoulder injury was:

> The ALJ is persuaded that the type of work Hammons performed for Trane for many years, in particular the repetitive reaching and lifting of metal panels and use of assembly machines, resulted in degeneration of his left shoulder glenohumeral joint greater than what would be expected of a man Hammons' age had the work been less strenuous. (Opinion Award and Order, p. 17).

A worker who can no longer perform all of his required job tasks lacks the ability to return to the "type of work" performed at the time of injury. *See, e.g.*, *Miller v. Square D Co*., 254 S.W.3d 810, 813-814 (Ky. 2008) (holding "it seems more likely that the legislature intended for the phrase 'the type of work that the employee performed at the time of injury' to refer broadly to the various jobs or tasks that the worker performed for the employer at the time of injury rather than to refer narrowly to the job or task being performed when the injury occurred"). *See also Ford Motor v. Forman*, 142 S.W.3d 141, 145 (Ky. 2014) ("When used in the context of an award that is based upon an objectively determined functional impairment, 'the type of work that the employee performed at the time of injury' was most likely intended by the legislature to refer to the actual jobs that the individual performed.").

**Again, KRS 342.730(1)(c)(1) refers to the type of work performed at the time of the injury, not on the date he last worked for the Defendant**. The time of the injury includes the type of repetitive work performed by the Plaintiff which caused his injury. The ALJ finds that

-7-

because the repetitive reaching and lifting of metal panels in the assembly of Trane products was part of the work that Hammons performed at the time of the injury, and Hammons cannot perform that type of work due to his injury, the "triple-multiplier" of KRS 342.730(1)(c)(1) applies to his award.

(Bold-face emphases added.)

Trane appealed to the Workers' Compensation Board, which affirmed the ALJ by Opinion and Order[3] entered on July 28, 2023, as follows in relevant part:

> Trane does not contest that Hammons' left shoulder condition and need for surgery was caused by work-related cumulative trauma. There is no appeal relating to the statute of limitations or notice. Here, the sole issue on appeal is the enhancement by the three-multiplier pursuant to KRS 342.730(1)(c)1. The crux of the matter is whether Hammons' move from the Salvagnini machine when production ceased to working on the cleanup crew until the plant closed, prohibited the award of the three-multiplier.
>
> . . .
>
> **[T]he time of injury referred to in KRS 342.730(1)(c)1 must logically refer to the type of work that caused the cumulative trauma, and not just work that was performed on a specific date**. Trane has offered no authority for its position that the "time of injury" for purposes of KRS 342.730(1)(c)1 enhancement in injury claims allegedly caused by cumulative trauma must strictly relate to the work Hammons was performing on his last day of work. . . .

---

[3] The Order denied Trane's request for oral argument.

> **The Board believes the analysis of the case law when awarding a three multiplier in this cumulative trauma claim is correct**. The type of work performed by the claimant must not be viewed in a vacuum as to what he was doing on his last day of work. Substantial evidence supports the ALJ's application of the three-multiplier as there was a permanent alteration in Hammons' ability to return to his pre-injury work.

(Bold-face emphases added.)

In this appeal, Trane makes the same argument that it had made before the Board; *i.e.*, that the ALJ abused his discretion in awarding the three-multiplier based upon the requirements of Hammons's job operating the Salvagnini machine. Trane claims that the physical requirements of the cleanup-crew job should dictate the legal analysis. Once again, Trane has cited no authority to support its position. "Assertions of error devoid of any controlling authority do not merit relief." *Koester v. Koester*, 569 S.W.3d 412, 414 (Ky. App. 2019).

The standard of our review is "to correct the Board only where [this] Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). We perceive no such error in the case before us. To the contrary, we agree with the Board that the sound reasoning of the ALJ was correct.

Accordingly, we affirm the Board's July 28, 2023, Opinion Affirming and Order.

ALL CONCUR.


BRIEF FOR APPELLANT:   BRIEF FOR APPELLEE:

Donald J. Niehaus     McKinnley Morgan
Lexington, Kentucky     London, Kentucky